BOWLIN, Plaintiff in Error, v. FURMAN, Defendant in Error.

1. Under the act of incorporation of March 1, 1851, (Sess. Acts, 1851, p. 139,) the city of Carondelet had power to sell and dispose of its school lands; the purchaser was under no obligation to see to the application of the purchase money. She might convey a portion of her school lands in exchange for and by way of compromise of an adverse claim to land embraced within her survey of common. Third persons could not dispute the validity of such an exchange on the ground that Carondelet had thereby committed a breach of its obligation to appropriate the school lands and their proceeds to the use of schools.
2. A conveyance by Carondelet by quit-claim deed of a portion of its school lands is valid and operative although at the date thereof there was no survey or assignment by the United States for the use of schools; to sustain a conveyance made before such assignment it is not necessary to invoke the doctrine of the enurement of after acquired titles.

*Error to St. Louis Land Court.*

This was an action in the nature of an action of ejectment to recover possession of four arpens of land, being a part of

United States survey No. 124, in the common field of Caron-
delet. The land embraced by said survey No. 124 was as·
signed to Carondelet for the support of schools November 14,
1853. The land afterwards embraced in said survey No.
124, being a tract of one by forty arpens, was on the 18th of
November, 1851, conveyed by the city of Carondelet to
Louisa Franklin and Constance Shultz, under whom plaintiff
claims title. This conveyance on its face purported to have
been made by way of compromise of a claim of said grantees,
as the legal representatives of Gabriel Constant, to a tract of
two hundred arpens in the common of Carondelet, which had
previously been leased and disposed of by Carondelet for her
benefit. Said deed was a quit-claim deed. The court gave
the following instruction at the instance of the defendant:
" 1. Although the jury may find from the evidence that the
premises in question are situated within the outboundary of
the town of Carondelet shown by the survey and report of the
surveyor general given in evidence, and although the said
premises may have been set apart by said surveyor to the
inhabitants of Carondelet for the support of schools, yet the
ordinance of the city of Carondelet dated November 18, 1851,
and the deed purporting to have been made by the city of
Carondelet of the same date, and the deed of Franklin and
wife and Shultz and wife read in evidence, are not sufficient
to vest the legal title of said premises in the plaintiff; and the
jury should find for the defendant."

The court refused the request of the plaintiff to instruct as
follows: " 1. If the jury believe from the evidence that the
lot of ground sued for in this action is within United States
survey No. 124, given in evidence by plaintiff, and that said
lot of ground is included within the tract of land described
in the deed of the city of Carondelet to Louisa Franklin and
Constance Shultz, and also within that described in the deed
of Franklin and Shultz and their wives to plaintiff, both
given in evidence by plaintiff; that all the documents given
in evidence by plaintiff are genuine, and that the tract of
land surveyed as survey No. 124 is within the outboundary

of the town of Carondelet given in evidence by plaintiff, then the plaintiff has established a perfect legal title to the premises in controversy ; and, in order to defeat that title and prevent the plaintiff from recovering in this action, the defendant must have proved to the satisfaction of the jury, not only that the land sued for in this action, or some part of a larger tract of which it formed a part, was inhabited, cultivated and possessed prior to the 20th day of December, 1803, but must also show by whom it was cultivated prior to said time, and that such person or persons inhabited, cultivated or possessed the said lot, or the larger tract of which it formed a part, under some right, title or claim thereto in their own right, and that such right, title or claim continued in such person or persons and their legal representatives from the 20th day of December, 1803, to the time of the passage of the act of Congress of June 13, 1812.    2. If the jury believe from the evidence that the premises in controversy, or the tract of which it formed a part, was inhabited, cultivated or possessed by some one prior to the 20th day of December, 1803, but there is no evidence satisfactory to them of who that person was, then the jury are instructed that there is no sufficient evidence of any confirmation of the land in controversy under or by virtue of the act of the 12th of June, 1812, of the Congress of the United States.''

The plaintiff took a nonsuit, with leave, &c.

*Shepley*, *Wright* and *Casselberry*, for plaintiff in error.

I. The city of Carondelet has full and absolute power of dominion and disposition of all property vested in the corporation.    The power of disposition over the common and the school lands is entirely unrestrained.    It is only of the *proceeds* of the one-tenth of the sales of the common and the whole of the sales of the school lands that a particular disposition is made, that it shall be held for the support of schools. Carondelet did not hold these lands strictly as trustee, but as absolute proprietor, clothed, to be sure, with the obligation to appropriate them or the proceeds to the support of schools.

The exchange of lands was a sale within the meaning of the act. Even if the city holds as trustee, the purchaser is not bound to look to the proper application of the proceeds. The city conveyed its legal title to those under whom plaintiff claims. (Gales v. Manning, 20 Mo. 461.) It is no objection that the assignment to the schools was subsequent to the conveyance by Carondelet. The title of Carondelet was perfect at the time of the conveyance. The deed was sufficient to carry the land. (Kissell v. Public Schools, 18 How. 215; Landes v. Brant, 10 How. 348.) The question whether a subsequently acquired title enures under a quit-claim deed has no application to this case. Carondelet had title at the time of the conveyance.

*Krum & Harding*, for defendant in error.

1. The deed from Carondelet was a mere quit-claim. The subsequent assignment for the use of schools did not enure to the benefit of the grantees in the deed. (Bogy v. Shoab, 13 Mo. 365.) The deed from Carondelet to Franklin and Shultz was void. The city had no power to barter the school lands for the benefit and use of the corporation. No powers will be inferred to enable a trustee to violate his trust. The deed is void for fraud patent upon its face. The intention to convert the trust fund for the benefit of the trustee is apparent upon the face of the deed. Can the grantees in such a deed claim that they are not bound to see to the application of the proceeds of the sale, or even that they have acquired the *legal* title and hold themselves liable *to* account to the beneficiaries?

Scott, Judge, delivered the opinion of the court.

This is an action of ejectment, and the pleadings present nothing but the dry point, whether there was authority in the city of Carondelet to make the conveyance of the land in dispute through which the plaintiff claims. The record does not raise the question whether those, under whom the defendant holds, had title, under the act of 13th June, 1812, by

virtue of inhabitation, cultivation or possession prior to the 20th December, 1803.

The first clause of the second section of the eighth article of the act incorporating the city of Carondelet enacts, that the property in all lands granted, for the benefit of schools, to the inhabitants of the town or village of Carondelet by any act of the Congress of the United States, is hereby vested in the corporation created by this act. The following clauses do not seem to be designed to restrict the grant, but are only directions for the management of the property conferred by the act on the city. (Sess. Acts, 1851, p. 148.) An objection of the defendant is, that the conveyance made by the city was not a sale, but an exchange which it had no authority to make. By its charter, the city had authority to take all measures necessary to obtain possession of the school lands, whether by action at law or compromise with adverse parties. The school land exchanged was not in possession of the city; it was in dispute, as this suit shows. The party with whom the exchange was made claimed a tract situated in the commons of Carondelet. The city, then, compromised a claim to a portion of her commons by conveying a lot of the school lands in satisfaction of it. The charter provided that one-tenth part of the proceeds of any sales of the common should be paid over to the school fund of said city and be applied to the use of schools therein. It may be said that the portion of the commons claimed had been leased and disposed of before the city was incorporated, so that there could be no sales in which the schools could have an interest. To this it may be answered that there was a power of granting in fee the lands leased, and the tenth part of the profits arising from this source may have been worth as much or more than the claim of the schools to the lot in controversy. This transaction, then, might be referred to the power to compromise as the source of the authority which gave a warrant to its existence. The act of Congress of Jan'y 27, 1831, vested the legal title to the school lots reserved by the act of the 13th June, 1812, in the state, to be sold or disposed of or

regulated for school purposes in such manner as might be directed by the legislature. The state granted the full property in these lands to the city of Carondelet for the benefit of schools, with directions to compromise disputed titles and to make sales, applying the proceeds to the purposes of the grant. The power of establishing, regulating and supporting common schools was vested in the council, by the charter; so that the corporation was as well one for school purposes as for municipal regulation. Powers so extensive would sanction the exchange made between the city and the vendors of the plaintiff. Under the circumstances there was no duty [imposed] on the purchaser to see to the application of the purchase money or to inquire whether the trustee was guilty of a breach of trust. Had the city exchanged a portion of the school lands not suitable as a site for a school-house for a lot adapted to that purpose, the title would certainly have passed. We are not inquiring whether Carondelet has been guilty of a breach of trust for which she may be liable; for such an hypothesis is not at all inconsistent with the idea that the power to pass the title existed. The legal title to the lot was beyond all controversy in the city; she was a trustee; and it can not be questioned that the deed of a trustee conveys a legal title. The trustee having a legal, though defeasible, title, that title becomes absolute in his vendee in a court of law. In a court of law, the vendee need not show that the conditions of the trust deed have been complied with. (Gale v. Mensing, 20 Mo. 461; Taylor v. King, 6 Munf. 366.) Although there is now no distinction between courts of law and equity, yet if a party under the present system will file a petition which formerly only entitled him to a legal remedy, he can not now under such a petition have any other than the remedy he formerly had. If he would have equitable relief, he must set out in his pleading the facts which give him title to it. The pleadings in the present action are only designed to try the mere legal title, and therefore that is the only matter we are called upon to decide, and we accordingly speak of it as an action at law.

Another argument of the defendant is, that the deed is void for fraud patent upon the face of it, because it shows that a trustee is attempting to convert a trust estate to his own use and declares his intention upon the face of the deed; and he further maintains that the grantees in the deed are bound to see to the application of the purchase money and to hold themselves liable to account to the beneficiaries. This argument proceeds certainly on the ground that the title passed from the city to her aliences. No fraud by way of breach of trust and confidence can have been committed by the city unless she has passed away the title granted to her by the general assembly. If no title has passed, the beneficiaries of the trust are not injured. But if there is a breach of trust and a fraud has been committed, then the title must have passed; and if a title has passed, it is obvious that the plaintiff must recover in this action, as the right to the strict legal title is the only matter in issue by the pleadings. If the city has been guilty of a breach of confidence in conveying away a trust estate; if the plaintiff has been guilty of a fraud in accepting a title under it, that is a matter not to be determined in this suit, nor in a suit to which the defendant is a party. If Carondelet has betrayed and defrauded those who confided in her, that is no concern of the defendant. Let those complain who are injured. A deed may be fraudulent and void, but it is not for strangers to complain of it. A deed that is fraudulent can only be avoided by those who are injuriously affected by it. If a breach of trust has been committed in aliening this land, the defendant is no more affected by it than any other member of the community.

It was insisted by the defendant that the deed under which the plaintiff claims was executed before the school lands therein described and attempted to be conveyed were assigned and set apart for the use of schools, consequently there was no title in Carondelet at the date of the deed, and therefore none could pass by the deed of the vendors of the plaintiff. In the case of Kissell v. The Public Schools, 18 How. 215, the supreme court of the United States expressed the

opinion that the school lands were in the condition of Spanish claims after confirmation, without having established and conclusive boundaries made by public authority, and which claims depended for their specific identity on surveys to be executed by the government. If the school lands were in the condition of confirmed Spanish grants before a survey, surely no question can arise as to the right to dispose of them, and that a disposition of them in that state would carry any title the government would afterwards pass. The deed would convey the land, and the subsequent designation, like the survey of a confirmed grant, would point out the land designated. The doctrine of the enurement of a title acquired after the making of a conveyance is not applicable to the circumstances of this case.

Reversed and remanded; the other judges concur.