## MATTHEWS v. MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### Division One, February 23,1898.*

1. **Evidence:** FIRE BY RAILROAD: PROBATIVE EFFECT OF LIKE CONDI-TIONS. In a suit under section 2615, Revised Statutes 1889, against a railroad for destroying a barn by fire, a witness was permitted to testify to having seen, subsequently to the fire, a spark from an engine strike the center pole of a tent which had been erected on the site of the barn. It was not first shown that the engine was of the same kind or in the same condition as the one from which it was al-leged the fire originated, nor that the condition of the weather nor the direction of the wind was the same. *Held,* that the evidence was competent as tending to prove the possibility, and consequent proba-bility, that the fire was communicated to the barn by one of the rail-road's engines.

2. ———: EXCLUSION OF EVIDENCE BY INSTRUCTION. Evidence offered by plaintiff was stricken from the record at the time on motion of de-fendant, and it is *held* that if a more specific exclusion was desired an instruction to that effect should have been asked.

3. **Deed of Trustee :** EFFECT OF CONDITION BROKEN BEFORE FORECLOS-URE. A trustee, in a deed of trust securing a debt, takes the legal title to the land, and on condition broken is entitled to the posses-sion. But even after condition broken the trustee in possession holds the legal title in trust for the grantor, and a payment of the debt be-fore foreclosure defeats the deed of trust and the legal title is at once vested in the grantor.

4. ———: ———: BURNING OF BARN BY RAILROAD ENGINE: NECESSARY PARTIES: CASE STATED. Plaintiff sued the railroad for the destruction of his barn by fire from the road's engine. 'Prior to the fire plaintiff had executed a deed of trust on the farm on which the barn stood to secure the payment of a note which had not matured at the time this suit was brought, but had been paid before the trial. *Held* that de-fendant was not on this account entitled to an instruction that plain-tiff could not recover. *Held,* also, that as the secured debt was paid before the trial, the trustee was neither a necessary nor a proper party. *Held,* also, that as neither the trustee nor the beneficiary is com-plaining because they were not made plaintiffs, the railroad company has no right to complain for them, a judgment herein being clearly a bar to a subsequent action for the damages done.

*Note.—Decided November 23, 1897, and motion for rehearing denied February 23, 1898.

5. **Burning of Barn by Railroad Engine:** INSURANCE. Plaintiff's claim against a railroad company for damages for the destruction of his barn by fire from its engines, can not be reduced by the amount of money he has received from an insurance company as an indemnity for the loss of the same barn, the railroad not being a party to the insurance contract and having no interest therein.

6. **Fire by Railroads:** CONTRIBUTORY NEGLIGENCE. In an action against a railroad company for the destruction of a barn by fire from its engines, it can not plead contributory negligence on the part of the owner as a defense, except to show that he was guilty of intentionally exposing it or other fraud. The legislature had the right to change the rule heretofore adhered to as permitting the plea of contributory negligence in damage suits, that rule not being founded upon any inviolable right. And this view is enforced by the fact that the statute gives the railroad the right to indemnify itself against such loss by insuring the property in its own name.

7. ———: MEASURE OF DAMAGES: GENERALITY IN INSTRUCTIONS. In such an action the measure of damages is the reasonable worth of the barn and its contents at the time of the fire, and not the difference in the value of the real estate just before and just after the property was burned. (Distinguishing *Shannon v. Railroad,* 54 Mo. App. 223, and Sedg. on Damages, sec. 932a.) Unless the defendant asked for more specific instructions, on the ground that the jury should have ascertained the value of the barn in reference to its condition, location and the uses to which it might be applied, it can not here complain that too much latitude was given the jury.

8. ———: ———: EVIDENCE: ORIGINAL COST. It was not error to permit plaintiff to show the original cost of the barn as one way of ascertaining the amount of the loss, the defendant having the right to show the difference in cost and the depreciation in value by use and natural causes.

9. ———: ———: ———: OPINION OF WITNESSES. Opinions of witnesses are proper evidence as to the value of property.

10. **Continuance :** ABSENT WITNESSES. Where the opposite party admitted that two absent witnesses would swear to the facts set up in an affidavit for continuance, and such affidavit is read to the jury as the testimony of one witness who was still absent, and the other witness was present in court though not called, no error was committed in denying a continuance on that ground.

11. ———: LOST DEPOSITION. The defendant had taken plaintiff's deposition, which had been lost at the time of the trial, which loss was charged to plaintiff's attorney. *Held,* that a continuance could not be granted on that ground, as plaintiff at the time of the application was present in court. *Held,* also, that the deposition of a party can not,

under section 8920, Revised Statutes 1889, be taken by his adversary for the purpose of forcing him to disclose the evidence on which he relies and the testimony he will give on the trial.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Elijah Robinson* and *Stuart Carkener* for appellant.

(1) The court erred in overruling the defendant's application for a continuance, and forcing it to trial without the depositions of the plaintiff and the witness Applegate. In this State it has uniformly been held that where a continuance is refused a party who has used due diligence to procure his evidence, such refusal constitutes reversible error. *McLean v. Harris*, 1 Mo. 501; *Riggs v. Fenton*, 3 Mo. 28; *Moore v. McCullock*, 6 Mo. 444; *Tunstall v. Hamilton*, 8 Mo. 500; *McKay v. State*, 12 Mo. 492; *Barnum v. Adams*, 31 Mo. 532; *State v. Anderson*, 96 Mo. 241. (2) The court erred in permitting witness Gentry to testify as to the effect of a spark falling in the chaff in the barn. It was not a matter for expert evidence, and it was not proper for the witness to express an opinion in regard to it. Moreover, it was not shown that the witness was qualified to form an opinion on the subject. *Walton v. Railroad*, 40 Mo. App. 540; *Gouyly v. Railroad*, 35 Mo. App. 87; *Railroad v. Kellogg*, 94 U. S. 469. (3) Mr. Downing, witness for defendant, should have been permitted to testify whether tramps were in the habit of coming there. *First.* His testimony on this question would have corroborated that of Mr. Wood, and defendant was entitled to it for that purpose. *Second.* This was a case of purely circumstantial evidence, and

the court should have admitted every item of competent evidence legitimately bearing on the issues involved; should have admitted all the evidence having a tendency to put the jurors in the position of a man who had lived there, and was perfectly familiar with all the facts and surroundings. (4) The proper measure of damages was the difference between the value of the farm before the fire and after the fire. *White v. Stoner*, 18 Mo. App. 540; *Gates v. Railroad*, 44 Mo. App. 495; *Shannon v. Railroad*, 54 Mo. App. 223; *Dwight v. Railroad*, 34 Cen. Law. Jour. 409; *Railroad v. Tubbs*, 47 Kan. 630. (5) The court erred in permitting the plaintiff, as a witness, to express an opinion as to what the barn was worth at the time of the fire. *First.* The question was too general. The word worth, as there used, may have meant what it had cost to build the barn, or what it would cost to rebuild it, or what it was worth as a matter of convenience to the plaintiff; neither of which would constitute the proper measure of damages. *Second.* The plaintiff had not shown himself qualified to express an opinion as to the value of the barn at the time of the fire. (6) As applicable to all the foregoing points, defendant invokes the rule that where error is committed a presumption of prejudice arises, and the judgment must be reversed, unless it clearly appears from the entire record in the case that the verdict returned by the jury was the only one that could have been rendered, regardless of the errors of the court. *Green v. St. Louis*, 106 Mo. 454; *Dayhorsh v. Railroad*, 103 Mo. 570; *McDonald v. Motney*, 82 Mo. 358; *State v. Simons*, 68 Mo. 305; *City of Clarence v. Patrick*, 54 Mo. App. 467: *Walter v. Hoeffner*, 51 Mo. App. 50; *Suttic v. Aloe*, 39 Mo. App. 43; *Gilmer v. Higley*, 110 U. S. 50; *Smith v. Shoemaker*, 17 Wall. 639; *Stafford v. Oscaloosa*, 57 Iowa, 750; *Hall v. Jenness*, 6 Kan. 364. (7) The court erred in giving

plaintiff's instruction number 8. *First.* It did not give the jurors any rule whereby to fix the damages, but on the contrary left them to erect their own standard for the measurement of the same. *Flynt v. Railroad,* 38 Mo. App. 94; *Wilburn v. Railroad,* 36 Mo. App. 203; *Goss v. Railroad,* 50 Mo. App. 614; *Schaub v. Railroad,* 106 Mo. 74. *Second.* It permitted plaintiff to recover for injury done to the freehold, which was not proper. He had parted with the title and was only a tenant. He therefore was entitled to recover only for the injury which he sustained as a tenant. *Kennett v. Plummer,* 28 Mo. 142; *Woods v. Hildebrand,* 46 Mo. 284; *Johnson v. Houston,* 47 Mo. 227; *Kennedy v. Siemere,* 120 Mo. 73; *Springfield E. & T. Co. v. Donovan,* 120 Mo. 427; *Bobb v. Granite Co.,* 41 Mo. App. 642; *Gilbert v. Kennedy,* 22 Mich. 5; *Foster v. Elliott,* 33 Iowa, 216; *Parks v. Barton,* 15 Pick. 198; *Randell v. Cleveland,* 6 Conn. 328; *Elliott v. Smith,* 2 N. H. 430; *Anderson v. Nesmith,* 7 N. H. 167; *Lane v. Thompson,* 43 N. H. 320; *Page v. Hamilton,* 10 Cush. 99; *Cole v. Stewart,* 11 Cush. 181.

*Warner, Dean, Gibson & McLeod* and *Stewart Taylor* for respondent.

(1) The court properly overruled defendant's application for continuance for several reasons, its evident purpose being delay. *State v. Foye,* 53 Mo. 337, *Lohart v. Buchanan,* 50 Mo. 201; *Baker v. Shaw,* 35 Mo. App. 619; *State v. Reed,* 89 Mo. 171; *Lohart v. Buchanan,* 50 Mo. 203; *Corder v. Primm,* 60 Mo. App. 424; *Taussig v. Shields,* 26 Mo. App. 326. (2) Gentry's evidence is competent, because it tended to prove the possibility, and consequent probability, that the fire was communicated to plaintiff's property by one of defendant's engines, and its probative force was

for the determination of the jury.    *Campbell v. Rail-road*, 121 Mo. 350; *Railroad v. Richardson*, 91 U. S. 470; *Smith v. Railroad*, 63 N. H. 25; *Railroad v. Gilbert*, 52 Fed. Rep. 711; *Thacher v. Railroad*, 85 Me. 509; *Sheldon v. Railroad*, 14 N. Y. 223; *Aldrige v. Railroad*, 3. M. & G. 515.    (3)    All the testimony as to how chaff would burn was stricken out by the court. (4)    The fact that tramps may have passed there the day before or the week before or a month before the fire, could have no bearing on the question as to the origin of the fire on the evening of September 1, 1891. (5)    It will not do to say that a Missouri farmer, who has built and paid for a barn, does not know its worth or value.    This statement of its value is a statement of a fact and not an opinion.    What an article costs is some evidence of its value, when it is shown that at the time in question it was of the same value that it was at the time of its purchase.    *Ins. Co. v. Taylor*, 24 Pac. Rep. 337; 2 Beach, Law of Ins., sec. 1292; *Stiltz v. Ins. Co.*, 29 N. W. Rep. 607; *Thomason v. Ins. Co.*, 61 N. W. Rep. 843; *White v. Hermann*, 51 Ill. 246; *Railroad v. Irvin*, 29 Ill. 178; *Browne v. Moore*, 32 Mich. 258; *Brill v. Flagler*, 23 Wend. 356; *Railroad v. Bunnell*, 81 Pa. St. 414; 1 Suth. on Dam., p. 798. The value of such property is more or less a matter of opinion.    *Railroad v. Calkins*, 90 Mo. 543; *Caulting v. Railroad*, 54 Mo. 391.    (6) . If the plaintiff was not in a position to know the value, it was not a difficult task for the counsel to show this by a proper cross-examination, by inquiring into his experience and sources of information.    This he did not do; nor did he call other witnesses to show that the value placed on the property destroyed was excessive.    *Stevens v. Springer*, 23 Mo. App. 385; 2 Suth. on Dam. 375, 378; *Robertson v. Knapp*, 35 N. Y. 92; *Joy v. Hopkins*, 5 Denio, 84.    (7) Property holders and residents of the neighborhood

where property is situated, are competent witnesses to fix the price of such property in that neighborhood. *Thomas v. Mallinckrodt*, 43 Mo. 65; *Tate v. Railroad*, 64 Mo. 153; *Seyfarth v. Railroad*, 52 Mo. 450; *Bowne v. Ins. Co.*, 46 Mo. App. 476; *Tubbs v. Garrison*, 25 N. W. Rep. 923; *Fisher v. Crescent Ins. Co.*, 33 Fed. Rep. 544. There was no other issue to be submitted to the jury. This court is emphatic in declaring that the question of contributory negligence is not to be considered in this case. This is an action under the statute, which is remedial in its nature. If defendant destroyed plaintiff's property by fire from an engine it must respond in damages. *Campbell v. Railroad*, 121 Mo. 349; *Matthews v. Railroad*, 121 Mo. 299. (8) This right of action is given to plaintiff by statute. If plaintiff received money from the insurance company in part payment for his barn, it was on a contract between him and the insurance company. The defendant company was not a party to that contract directly or indirectly. Defendant could defeat the object and purpose of this statute if its contention be correct. *Matthews v. Railroad*, 121 Mo. 336; *Dillon v. Hunt*, 105 Mo. 163; *Thornton v. Royce*, 56 Mo. App. 183; 1 Suth. on Dam. (1882) p. 242; *Cunningham v. Railroad*, 102 Ind. 478; *Weber v. Railroad*, 35 N. J. L. 412; *Ins. Co. v. Railroad*, 25 Conn. 265; *Briggs v. Railroad*, 72 N. Y. 26; *Rockingham v. Bosher*, 39 Me. 255. (9) Appellant complains of the instruction on the measure of damages. It asked no instruction on this point, nor did it ask any directing the jury what elements of damage they could consider. To sustain its position on this point, appellant cites *Goss v. Railroad*, 50 Mo. App. 614, and *Schaub v. Railroad*, 106 Mo. 74, and some other decisions rendered prior to the time those were announced. All of which have been overruled. *Haymaker v. Adams*, 61 Mo. App. 586; *McCarroll v. Kansas City*, 64 Mo.

App. 288. These cases declare the correct rule in such matters. *Browning v. Railroad*, 124 Mo. 71; *Campbell v. Railroad*, 121 Mo. 340; *Anderson v. Miller*, 33 S. W. Rep. 617; *Faulkner v. Railroad*, 51 Mo. 311; *Tate v. Railroad*, 64 Mo. 158. (10) Upon the undisputed evidence in this case, as we have already shown, the verdict of the jury was not excessive. If there had been no instruction as to the measure of damages, or the instruction had been wholly erroneous, yet if the amount found by the jury was fully authorized by the evidence, the defendant is in no position to complain. *Noble v. Blount*, 77 Mo. 239; R. S. 1889, sec. 3569; *Blewett v. Railroad*, 72 Mo. 583; *Mauerman v. Siemerts*, 71 Mo. 101; *State v. Hopper*, 71 Mo. 425; *Bradford v. Floyd*, 80 Mo. 207; *Daudt v. Keen*, 124 Mo. 105; R. S. 1889, sec. 2303; *Haehl v. Railroad*, 119 Mo. 325; *McGowan v. St. Louis Ore & Steel Co.*, 109 Mo. 518; *Browning v. Railroad*, 124 Mo. 71. (11) The deed of trust in question was simply a security for a debt, and was no defense to this action. *Logan v. Railroad*, 43 Mo. App. 76; *Meads v. Hutchinson*, 111 Mo. 628; *In re Life Ass'n of America*, 96 Mo. 632; *Hargadine v. Henderson*, 97 Mo. 375; *Hanna v. Davis*, 112 Mo. 599; *Kennett v. Plummer*, 28 Mo. 145; *Woods v. Hilderbrand*, 46 Mo. 287; *Hayward v. Cain*, 105 Mass. 213; *Clark v. Wilson*, 103 Mass. 219; *Hurlbut v. Railroad*, 130 Mo. 657; *Taylor v. Iron Co.*, 133 Mo. 362.

MACFARLANE, J.—This is an action under section 2615 of the Revised Statutes of 1889, to recover damages for the destruction by fire of the barn of plaintiff and its contents, charged to have been communicated to them by sparks from one of defendant's engines. The damages claimed for the destruction of the barn is $7,394.21 and for the loss of the contents, consisting of agricultural implements, grain, hay, etc., is

$5,042.70. The answer is, *first*, a general denial; *second*, contributory negligence; *third*, a plea in mitigation on account of insurance collected by plaintiff on account of the loss; and *fourth*, that the land was mortgaged as security for a debt and the mortgagee was a necessary party. A jury trial resulted in a verdict and judgment for plaintiff for $7,000, and defendant appealed.

It appeared from the evidence that plaintiff was the owner of a farm of about one thousand acres in Jackson county on the line of defendant's railroad. Plaintiff was a dealer in fine cattle and the farm was used in his business. About the year 1887 plaintiff built on the farm near Blue station and within about one hundred and thirty-five feet of defendant's railroad track and switches, a valuable barn, and thereafter used the same for sheltering his cattle and for storing feed and implements and machinery used on the farm. In the second story of the barn, on the side next to the railroad, plaintiff left an opening for the purpose of use in unloading and storing hay and other feed. This opening was provided with a door, which was generally kept closed. On the night of the first day of September, 1891, the barn and its contents were burned. The evidence, which was wholly circumstantial, tended to prove that the fire was started by a spark from one of defendant's engines being blown into the opening in the second story, the door of which plaintiff had neglected to close. Defendant offered evidence which proved that prior to the fire plaintiff executed and delivered to one Smart a deed of trust conveying to him the land to secure the payment of certain notes therein described. The notes had not matured at the commencement of the suit, but before the trial they were paid by a sale of the land under the deed of trust. It was shown also that at the time the

property was burned it was insured for the benefit of plaintiff, and that the insurance was afterward paid to him.    At the request of plaintiff the court gave to the jury the following instructions:

"1.    If the jury find from the evidence that plaintiff was the owner of the barn in controversy, and of its contents, and that they were destroyed by fire coming from an engine operated by defendant upon its railroad on the night of September 1st, 1891, then the defendant is liable to plaintiff for the damage done, although the engine may have been free from defects, and although there may have been no negligence in the management of the engine and train at the time of the fire.

"4.    If the jury find from the evidence that plaintiff had procured insurance upon the barn in controversy, and upon a portion of its contents, prior to the burning of the barn, and that after the burning of said barn he received certain moneys in settlement of said insurance, said insurance money so received can not go to diminish the amount of plaintiff's claim, if any, against the defendant; but if the jury, under the evidence and instructions, find that defendant is liable to plaintiff for the burning of the barn and its contents, they must allow plaintiff the full amount of the injury done to his property, without regard to the amount of insurance money he received.

"5.    If it appears from the evidence that on or about the sixth day of January, 1891, the plaintiff conveyed the land upon which the barn in controversy was located, to one David O. Smart, as trustee, to secure certain notes due from plaintiff to one F. G. Farrell, and that after the fire in controversy said land was sold under said deed of trust, and the said notes paid in full out of the proceeds of the sale, then plaintiff's cause of action, if any, is not affected by the fact

that said deed of trust was upon said land at the time said barn was burned.

"6.   Even if the jury should believe from the evidence that the windows or doors of plaintiff's barn were open, and that the fire caught from sparks that fell in the hay inside of said barn, that were thrown out by one of defendant's locomotives, yet the jury are instructed that the leaving open of said windows or doors was not such contributory negligence on plaintiff's part as will defeat a recovery by plaintiff, if you believe from the evidence and the other instructions given you that plaintiff is entitled to recover.

"8.   The court instructs the jury that if you find for the plaintiff, you will assess his damages at such sum as you may believe from the evidence the barn and its contents were reasonably worth on the first day of September, 1891; and if you believe from the evidence that a portion of said barn or of its contents was only partially destroyed by fire on said day, then you will allow plaintiff such sum on the property so partially destroyed as will reasonably compensate him for the loss thereby sustained, taking into consideration the value the property may have possessed for any purpose after its injury.   But the jury will not allow anything for the Angus cow sued for; and in estimating the damage the jury will make no deduction on account of any insurance money received by plaintiff."

The court refused to give instructions 7 and 8 asked by defendant as follows:

"7.   The court instructs the jury that the deed read in evidence in this case by the defendant vested in the grantee therein named the title to the real estate in question, together with the barn thereon, and placed him in possession thereof, and the plaintiff thereby became a tenant of said grantee; and the court further

instructs the jury that the plaintiff can not maintain this suit as to the barn in question, regardless of whether the fire that destroyed the same escaped from one of defendant's engines.

"8.   If the jury believe from the evidence in the case that the property in question was destroyed by fire by reason of any negligence and carelessness of the plaintiff, or anyone in his employ at the time; that such negligence and carelessness directly contributed to cause the fire, and that but for such negligence and carelessness the fire would not have occurred, then the plaintiff is not entitled to recover, regardless of whether the fire escaped from one of defendant's engines.   The court further instructs the jury that negligence and carelessness, as these terms are used in this instruction, mean the failure to exercise such care and diligence as an ordinarily careful and prudent person would exercise for the preservation of his own property, under the same or similar circumstances."

Section 2615 of the statute is as follows:   "Each railroad corporation owning or operating a railroad in this State shall be responsible in damages to every person and corporation whose property may be injured or destroyed by fire communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation, and each such railroad corporation shall have an insurable interest in the property upon the route of the railroad owned or operated by it, and may procure insurance thereon in its own behalf for its protection against such damages."

I.   A witness was permitted, on the trial, to testify to having seen, subsequently to the fire, a spark from an engine on defendant's road strike the center pole of a tent which had been erected on the site of the barn. It is objected that it was not first shown that the en-

gine was of the same kind  or in the same condition as
the one from which, alone, the fire could have origi-
nated; nor was it shown that the condition of the
weather or the direction and force of the wind was the
same as it was on that occasion.   This objection is
fully answered in the opinion in *Campbell v. Railroad,*
121 Mo. 349, in which it was held that the evidence
was competent as tending to prove the possibility, and
consequent probability, that the fire was communicated
to plaintiff's property by sparks from one of defend-
ant's engines.   The probative force of the evidence
was for the jurors, in a determination of which they
had the right, and it was their duty, to consider the
differences in the condition of the engines and of the
weather.

II.   A witness testified over defendant's excep-
tion that a spark falling in chaff would, at first, burn
very slowly.   This evidence, on motion of the defend-
ant, was afterward stricken from the record on the
ground that the question as to how chaff would burn
was a matter of common observation and was not
therefore a proper subject for expert testimony.   This
action of the court relieves us of the necessity of a con-
sideration of the question.   If defendant had desired
to have the evidence more specifically excluded, an
instruction to that effect should have been requested.

III.   Prior to the burning of the barn plaintiff
had executed and delivered to one Smart a deed of
trust on the farm upon which it stood as security for
a note to a third person for a large amount.   The note
had not matured at the time this suit was instituted,
but had been paid, by a sale of the farm, before the
judgment herein was rendered.   By the terms of the
deed of trust plaintiff was permitted to remain in pos-
session of the farm until condition broken without

the payment of rent, but agreed after condition broken
to deliver possession thereof, on demand to the trus-
tee.    Under this state of facts defendant asked, and the
court refused to give, instruction 7 set out fully in the
statement.    There can be no doubt, under the decisions
of this court, that a trustee, in a deed securing a debt,
takes the legal title to the land, and on condition
broken, is entitled to the possession thereof. *Bowlin v.
Furman*, 28 Mo. 427; *Springfield Co. v. Donovan*, 120
Mo. 423, and cases cited.    But even after condition
broken the trustee in possession holds the legal title in
trust for the grantor, and the payment of the debt be-
fore foreclosure defeats the deed, and the legal title is
at once invested in the grantor.    *Hudson Bros. v.
Glencoe S. & G. Co.*, 140 Mo. 103.    While, therefore,
the legal title is vested in the trustee, it is held merely
in trust as security, and the beneficial interest remains
in the grantor subject to the payment of the secured
debt.    The deed of trust, then, is really a mere security,
and an injury to the freehold is a damage to the
grantor, who is, in equity, the real owner, and he is at
least a proper party to a suit to recover compensation
therefor.    It is unnecessary to inquire, in this case,
whether the trustee was a necessary party to the suit
when instituted, for the secured debt was paid before
the trial, and the trustee at that time, at least, was
neither a necessary nor a proper party.    Plaintiff, as
the substantial owner of the farm when the barn was
burned, was the real party damaged; neither the trus-
tee nor the secured creditor is complaining, and we
are unable to see that defendant, who is in nowise in-
terested in the deed of trust, has a right to complain
after satisfaction of the debt.    If defendant is liable
for the damages, there can be no difference to whom it
is paid if payment discharged the liability and is a bar
to an action by another party.

IV.  At the time the barn was burned plaintiff
had it insured in his own name and for his own bene-
fit.  This insurance he afterward collected.  Defend-
ant insists that the damage for the loss of the barn
should be reduced by the amount paid plaintiff by the
insurance company.  The argument is that it would
be unreasonable to allow plaintiff to collect from de-
fendant the full amount of damages for his loss after
having already received partial indemnity from the in-
surance company.  While at first thought the argument
appears plausible, the principal invoked here has, after
careful consideration and sound reasoning, been dis-
approved by several decisions of this court.  *Matthews
v. Railroad*, 121 Mo. 298, and cases cited.  Under these
decisions it is held that a party will not be allowed in-
demnity for his own wrong under a contract to which
he is not a party and in which he has no interest.  The
insurance money in this case was not paid in satisfac-
tion, in whole or in part, of defendant's liability.
Defendant is liable for its wrongful act and has no con-
cern whether the damages are paid to plaintiff or to
the insurance company.  That question is between the
parties to the contract of insurance and is not in issue
in this case.  That defendant had the right to protect
itself by insurance in its own name does not affect, in
the least, the principle involved.  Though it neglected
to avail itself of the right conferred upon it by the
statute, yet it has no more right to claim the benefit of
plaintiff's contract with the insurance company, made
for his own protection and for which he paid, than it
would have to claim under the same contract had it no
insurable interest in the property.  In either case the
contract is between the owner and the insurance com-
pany and is not for the benefit of a third person whose
negligent or wrongful act caused the injury.

V.   The court refused, at the request of the defendant, to instruct the jury that if the property in question was destroyed by fire by reason of the negligence of plaintiff, or anyone in his employ, which negligence directly contributed to cause the fire, and that without such negligence the fire would not have occurred, then the verdict should be for the defendant. The only negligence ascribed to the plaintiff is that of permitting the door in the second story of the house to remain open.   Defendant insists that if such an act was negligent and directly contributed to start the fire it would bar a recovery.   The question then fairly raised by the instruction is whether, under the statute in question, the contributory negligence of the landowner, in the control and management of his property, constitutes a defense to an action for damages caused by such fires.

In *Matthews v. Railroad, supra*, it was said by GANTT, J., who wrote the opinion: "By virtue of section 2615 the defendant is made an insurer against fire set out by its engines and it is a familiar rule that contributory negligence short of fraud does not furnish any defense to an action by the insured on his policy of insurance."   Counsel admits that this statement, as a legal proposition, authorized the refusal of the instruction asked, but, he says, the statement was not necessary to a decision of the case and was therefore a mere *dictum* of the judge who wrote the opinion and is not therefore an authority for the correctness of the principle of law announced.   That was also a suit under section 2615 of the statute.   Defendant undertook to prove, as a defense to the action, that plaintiff had negligently permitted dry grass and weeds to accumulate on his property, adjacent to the railroad, by means of which the fire was started and communicated to his buildings.   The learned judge pointed out that, under

the rulings of this and other courts, it was not contrib-
utory negligence in a farmer "to permit dead and dry
grass to remain in his field adjoining the right of way,
especially when there was no evidence that this is out
of the usual course of husbandry." But the action in
that case was not for negligence, but under a statute
which makes railroad companies absolutely responsi-
ble in damages for property destroyed by fire commu-
nicated directly or indirectly by engines in use upon
their roads. The concluding paragraph of the opin-
ion above quoted was therefore a direct decision of
the question involved in this case, namely, that con-
tributory negligence, as a cause of the fire, can not be
pleaded as a defense to an action under this statute.
It is true, the court might have rested its decision alone
on the fact that no contributory negligence was
shown, but it did not do so, and we must take what
was there said as a decision of the question involved in
this case. The inquiry then is, was the statute, so far
as it affects the question of contributory negligence,
correctly interpreted by the opinion delivered in the
*Matthews* case. The importance of the question in-
volved, and the respectful earnestness of counsel in his
argument against the rule declared in that case, has
induced us to give it a careful reconsideration.

The statute imposes upon railroad companies an
absolute liability for all damages caused by fires com-
municated directly or indirectly to the property of
others by locomotive engines in use upon railroads
owned or operated by them. There is no exception or
qualification to this liability. The statute declares an
absolute rule of law in respect to which party shall
suffer the loss occasioned by such fires. The courts
have no right to add to the plain language of the stat-
ute an important and far-reaching exception, limiting
the liability to the care the owner has taken to protect

his property from the wrongful acts of railroad companies. The damage resulting from such fires must fall either upon the company, whose engine starts it, or upon the person whose property is destroyed. The statute fixes the liability, and justly, upon the one who puts in motion the dangerous and destructive element. The rule of contributory negligence is not founded upon any inviolable right, but was established by the courts as the most reasonable and just in view of the impossibility of measuring what part of the damage is attributable to the negligence of the respective parties. As has been said: "The law has no scales to determine in such cases whose wrong weighed most in the compound that occasioned the mischief." *Railroad v. Norton*, 24 Pa. St. 469. A party having no natural or constitutional right to avoid the consequences of his own wrongful or negligent act on the ground that the concurring negligence of the party who suffered the injury contributed to cause it, there can be no doubt that the legislature had the power to change the rule and place the responsibility for damage by fires upon the party who wrongfully started them, regardless of the care the owner may have exercised in the use and management of his property short of intentional exposure or other fraud.

The statute also gives the railroad company protection by authorizing them to insure the property along the route of their railroads against damages caused by fires communicated by their own engines. In case this barn had been insured by defendant, the insurance company could not have defended an action for damages, on its contract of insurance, on the ground that the negligence of the plaintiff had contributed to cause the fire. The railroad company could, according to the argument of counsel, collect the damages from the insurance company, and then defeat an action

by the property owner. Such a result would be unreasonable and could not have been intended. If the terms of the statute were open to interpretation, the intent to impose an absolute liability clearly appears from this authority to insure.

Elliott, in his late work on railroads, says: "Where there are statutes in force imposing liability upon a railway company for fires set by its locomotives, the question of the owner's contributory negligence is immaterial and has no effect on his right to recover." Vol. 3, sec. 1238. The cases cited fully sustain the text. *Laird v. Railroad*, 62 N. H. 254; *West v. Railroad*, 77 Iowa, 654; *Rowell v. Railroad*, 57 N. H. 135. Statutes of many States require railroad companies to fence their roads in order to prevent cattle from trespassing upon the tracks, and declare them absolutely liable for all stock killed or injured by locomotives and trains in case fences have not been built. In suits for damages under these statutes, it is generally held that negligence of the owner in permitting his stock to run at large in the vicinity of the unfenced railway is immaterial and constitutes no defense. Beach on Contrib. Neg., chap. 9, and cases cited. 3 Elliott on Railroads, sec. 1209, and cases cited. Under such a statute it is held in this State that an owner of cattle killed on a railroad is not guilty of contributory negligence in pasturing them on his own land though he may be aware of the defective condition of the railroad fence. *Donnovan v. Railroad*, 89 Mo. 147.

Council cites, and largely relies upon, the decisions of this court in actions for damages caused by the violation of a statute requiring signals of approaching trains to be given at railroad crossings, in which it is held that notwithstanding the default of the railroad company in respect to giving the required signals, the contributory negligence of the injured person will

defeat a recovery. R. S. 1889, sec. 2608; *Weller v. Railroad*, 120 Mo. 653, and cases cited. The statute cited, after requiring the signals to be given, provides: "And said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded, as required by this section; *provided, however*, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury." It is very evident that the statute, as qualified and limited by the proviso, was only intended to create a *prima facie* liability on proof of a failure to give the signals and that injury was sustained. It leaves open to the corporation the right to prove, as a defense, where the responsibility for the damages rightfully belongs. The rulings of this court in cases arising under the damage act (sec. 4425, *et seq.*) have no application to suits for damages under the act in question, for the reason that under the former statute, negligence is the foundation of the action.

As held in the *Matthews* case, *supra*, the effect of the fire statute is to make the railroad company an insurer against loss by fire communicated by its locomotive, and contributory negligence of the owner in the lawful use of his property, short of fraud, furnishes no defense to the action.

VI. The court instructed the jury, in effect, that in case they found for plaintiff they should assess his damages at such sum as they should believe, from the evidence, the barn and its contents were reasonably worth at the time they were destroyed. Defendant insists that the rule, so given by the court for measuring damages, was improper as applied to the loss of the barn. Counsel insists that the destruction of the barn was an injury to the freehold and the correct

measure of damages is the difference in the value of the real estate just before and just after the property was burned. "The general principle," says Sedgwick, "upon which compensation for injuries to real estate is given, is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature; in such case the measure of damages is the diminution of the market value of the property." 3 Sedg. on Dam., sec. 932. The same rule has been applied as affording the measure of damages when ornamental or fruit-bearing trees have been destroyed. *Id.*, sec. 933, and cases cited; *Shannon v. Railroad*, 54 Mo. App. 223. But we think this rule, in order to reach just results, can generally be applied only to cases in which the injury is done to the real estate itself, as distinguished from injury or destruction of what may be erected or grown upon it, as fences, buildings, crops, etc. In such case the owner is entitled to reimbursement for the loss he suffers and it is very manifest that the difference between the value of the real estate before, and its value after, the injury would not generally afford a fair rule for measuring the damages. It might often happen that a certain character of building would add nothing to the market value of the real estate upon which it is situated. For example, a cheap dwelling house, on a valuable lot in a business block, would possibly depreciate the salable value of the lot to the extent of the cost of removing it, yet it could not be fairly said that the house had no value, though it added nothing to the market value of the lot. The owner has the right to use his real estate in any lawful manner he may wish, and if the improvements he has chosen to erect upon it are destroyed by another, he is entitled to reimbursement for the loss he suffers. No rule is just which does not afford to the injured person fair compensation

for the loss or damage he has sustained.  If the building destroyed, although a part of the realty, has an ascertainable value, we can see no fairer rule for ascertaining just compensation for its loss than that given the jury in this case.  The value of the barn in its condition as it stood upon the farm before its destruction is the loss plaintiff sustained and for which he is justly entitled to compensation.  The jury, it is true, might have been required to ascertain the value of the barn with reference to its condition, locality and the uses to which it could have been applied in connection with the farm, yet the generality of the instruction does not constitute reversible error.  The special matters were included under the general language used and we ought to presume that they were taken into consideration by the jury.  If defendant thought the instruction too general, and left the jury too much latitude, it should have asked more specific instructions.  *Browning v. Railroad*, 124 Mo. 55.

For the purpose of ascertaining the value of the barn at the time of its destruction, plaintiff was entitled to put the jury in possession of all the facts bearing upon the question.  There was therefore no error in permitting witnesses to testify to the original cost, though materials should then have been more costly than when the building was burned.  Defendant had the right to show the difference in the cost and the depreciation in value by use and natural causes.

There was no error in permitting witnesses who knew the barn and were familiar with the cost of such buildings to testify to its value.  Generally the opinions of witnesses are not evidence, but there are exceptions to the rule.  "The case of the value of property forms one of the admitted exceptions and the opinions of witnesses are admitted as to the value of

property." _Thomas v. Mullinckrodt_, 43 Mo. 65, and cases cited.

VII. Before the trial commenced defendant applied for a continuance, which was refused. The motion for a continuance was supported by affidavit, The absence of two witnesses, Moran and Applegate, and the loss of the deposition of plaintiff which had been taken by defendant, were the grounds upon which the continuance was asked. Plaintiff admitted that the witnesses Moran and Applegate, if present, would swear to the facts set out in the affidavit, and such facts were read by defendant on the trial as the testimony of Moran, and Applegate was present at the trial though not called as a witness. There was therefore no prejudicial error in refusing a continuance on account of the absence of these two witnesses at the time the application was made.

It appears from the affidavit that some time before the trial defendant took the deposition of plaintiff and had the same filed as a deposition in the cause. When the trial came on this deposition could not be found. The facts stated in the affidavit tended to prove that the deposition, when last heard of, was in the possession of plaintiff and that defendant was in no way responsible for its loss. The affidavit states as ground for a continuance: "The deposition of plaintiff, which is missing, was taken several months ago and is quite lengthy, containing about twenty-five pages of typewritten testimony to the best of the recollection of defendant's attorney. In said deposition said Matthews testified very fully about the matters involved in this case, and it is utterly impossible for defendant's attorney to remember the statements made by said plaintiff in said deposition. It is very important that defendant should have said deposition in the trial of this case, and it can not try said case as well without

as with said deposition, and if it be forced to try said case without said deposition it may thereby suffer a wrong and an injustice." Plaintiff was present when the continuance was applied for, and indeed, testified in his own behalf, as a witness at the trial. Section 8920 of the statutes gives a party to a civil action the right to "compel the adverse party to testify as a witness in his behalf in the same manner and subject to the same rules as other witnesses."

It is insisted that under this provision of the statute one party to a suit "is entitled to know what his adversary's knowledge and information is, bearing on the case, and what his testimony will be in regard to the issues involved," and is also entitled to get at it in the shape of a deposition, and "have the deposition before him for such practical use as may be made of it on the trial of the case." There is no doubt the statute is often used for the practical purposes suggested, but we do not feel ourselves justified in going outside of the statute for its reasons when they sufficiently appear therein. At common law and under the Missouri statutes in force when this provision was enacted a party was not a competent witness, though under the chancery practice he could be required to make answer to such interrogatories as the opposite party might propound to him. It is said that this section was probably designed as a substitute for this ancient chancery practice. *Eck v. Hatcher*, 58 Mo. 235. This may have been the purpose, yet we must give effect to the statute as we find it written. The original intention evidently was to allow one party to make a witness of his adversary who was incompetent to testify in his own behalf. He could compel the adverse party to testify in his behalf, but by doing so he made him a competent witness who might be examined by the opposite party "under the rules applicable to the cross-examination of

witnesses." *Ess v. Griffith*, 139 Mo. 322. The statute remains unchanged though under the present law parties to suits are, with some exceptions, competent to testify as witnesses in their own behalf. "A party to a suit is a competent witness for himself and may be called as a witness by his adversary, and stands precisely as any other witness, in relation to that suit." *Ex parte Priest*, 76 Mo. 235. A party, when he takes the deposition of his adversary, must do so with the purpose of using it as evidence at the trial. This is the manifest intent of the statute. When taken and filed it becomes a deposition in the case and nothing more. The statute can not be tortured into meaning that the deposition of an adverse party may be taken for the purpose of forcing him to disclose the evidence on which he relies and the testimony he will give on the trial. The deposition could not have been read as such for the plaintiff was present, nor did defendant state, in his affidavit for a continuance, that the deposition contained admissions of plaintiff which he wished to read as evidence against him. The loss of the deposition was therefore no cause for continuance.

The trial seems to have been fair throughout, the verdict is amply supported by the evidence, and the judgment is affirmed. All the judges of this division concur.