GLOBE & RUTGERS FIRE INSURANCE COMPANY, Appellant, v. CHICAGO & ALTON RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, November 17, 1913.

1. FIRE INSURANCE: Damages: Valuation of Property. The plaintiff, an insurance company, issued a policy of fire insurance to a corporation engaged in mining coal. The policy covered a large number of "company or camp houses" each valued at $240. A passing engine on defendant's railroad set fire to and destroyed ten of these houses and damaged others to the extent of $25. The plaintiff paid the coal company, and received an assignment of its claim against the railroad company. This action is to enforce the claim against the latter. *Held*, that the defendant's liability, either to the coal company or its subrogated insurer, was the actual value of the destroyed and damaged property at the time of the fire.

2. ———: ———: ———: Statute. Under Sec. 3151, R. S. 1909, a railroad company by setting out a fire is liable to the owner for the actual damages sustained for all property de-

stroyed. But under Sec. 7020, R. S. 1909, the liability of an insurance company, as the insurer of property is not valued by the actual value of the property destroyed by the fire, but by the value stated in the contract of insurance.

3. ———: ———: **Privity of Contract.** While there is not privity of contract between the railroad company and the in- surance company, yet the insurer is *practically* the surety for the railroad company, the principal. And wherever the insurer has indemnified the owner for the loss, he is entitled to all the means of indemnity which the satisfied owner held against the party primarily liable.

4. ———: **Evidence: Similar Property: Aid to Jury.** The evidence of sales of a similar property to that in question, made in the neighborhood, about the same time, was admissible to aid the jury in determining the damages done by the fire to which the owner was entitled.

5. **DEFINITIONS: Reasonable Worth or Value.** "Reasonable worth" or "reasonable value" are terms which have a definite and common meaning to people of ordinary information and understanding, and their use in instructions relating to the issue of the market value of property should not be condemned as reversible error.

6. **MOTIONS: Retaxing of Costs: Statute.** Under Sec. 1965, R. S. 1909, a motion of the defendant to retax costs, being filed at the term the judgment was rendered, was timely and was properly sustained.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*Clarence A. Barnes* and *Barger & Hicks* for appellant.

*Scarritt, Scarritt, Jones & Miller* and *W. P. Pinkerton* for respondent.

JOHNSON, J.—In 1910, the plaintiff, an insurance company, issued a policy of fire insurance to a corporation engaged in coal mining in Randolph county. The policy covered a large number of small frame dwelling houses called "company or camp houses"

each of which was valued at $240. A fire caused by a passing train on defendant's railroad that ran through the camp totally destroyed ten of these houses and damaged others in the amount of twenty-five dollars. Proofs of loss were duly made by the coal company and plaintiff paid $2425 in discharge of its liability and received an assignment from the coal company of its cause of action against defendant. Plaintiff then commenced the present suit to recover the amount of its loss on the ground, alleged in the petition, "that upon the payment of said sum the said Globe & Rutgers Fire Insurance Company became and was subrogated to all the rights of the said Northern Central Coal Company against the said defendant, the Chicago & Alton Railroad Company for the recovery of the said sum of money, twenty-four hundred and twenty-five dollars, by reason of the destruction of the said property by fire communicated thereto by the locomotive engine in use on the railroad owned and operated by the defendant as aforesaid." The petition alleged that the ten houses destroyed were "of the reasonable cash value of twenty-four hundred dollars." The answer of defendant is a general denial.

The evidence shows conclusively that the fire which caused the loss originated from a passing locomotive on defendant's road and the only dispute between the parties relates to the measure of plaintiff's right of recovery. Defendant contends that the value of the houses at the time of the fire was the measure of damages and before the trial served on plaintiff an offer of judgment in writing in which it agreed that judgment might be rendered against it in the sum of four hundred dollars and the accrued costs. This offer was refused and at the trial defendant was allowed to introduce evidence tending to show that the houses were old, rotten, abandoned as dwelling places and that the coal company had been selling them for thirty-five dollars each, which was their reasonable value at

the time of the fire. The court refused the request of plaintiff for an instruction fixing the measure of damages at the amount of plaintiff's liability under the policy and instructed the jury that they "cannot allow plaintiff more than the reasonable value of each house, or houses, burned at the time and place of the fire."

Thus instructed the jury returned a verdict for plaintiff for $375. Five days after the verdict and at the same term of court defendant filed a motion "to tax the costs of this suit incurred since the tender herein against the plaintiff." This motion was sustained, plaintiff excepted and duly preserved its exception. After unsuccessfully moving for a new trial, plaintiff brought the case here by appeal.

First we shall dispose of the contention of plaintiff that the rulings of the court upon the instructions relating to the measure of damages were erroneous and prejudicial to the legal rights of plaintiff.

In setting out the fire which destroyed property of the coal company, defendant, under the provisions of section 3151, Revised Statutes 1909, became liable to the owner of the property for the actual damage sustained. The liability of the plaintiff, as the insurer of the property, was not measured by the actual value of the property destroyed by the fire, but by the value stated in the contract of insurance (sec. 7020, R. S. 1909.) If defendant's evidence relating to the actual value of the property is correct, plaintiff agreed in the policy to pay an indemnity far in excess of that value and under the statute just cited became bound by the contract of insurance to sustain a loss greatly exceeding that incurred by the insured in consequence of defendant's tort. But defendant was neither a party nor a privy to that contract (Matthews v. Railway, 142 Mo. 645; Hartford Fire Ins. Co. v. Railway, 74 Mo. App. 106) and its liability as a tort-feasor cannot be expanded by the terms of a contract to

174 Mo. App.—35

which it was a complete stranger. The only cause of action plaintiff could have against defendant, either by operation of law or under the assignment it obtained from the coal company·is the cause that the tort of defendant conferred upon the latter company. By paying the indemnity provided in the policy plaintiff became subrogated to the rights and remedies of the coal company against defendant—to no more and no less. It stepped into the shoes of the coal company and is no more entitled to add to rights thus obtained, the loss it sustained in consequence of an improvident contract than the coal company would have been entitled to magnify its demand against defendant by the value placed on the property in the insurance contract.

We repeat with approval the following excerpt from the opinion in Insurance Company v. Railway, 74 Mo. App. l. c. 112; ''The insurance company had no connection in any manner with any act which caused the loss. Such company's only connection with the loss is its contract to recompense Burruss whenever the loss should occur. If therefore the insurance company has been compelled to pay Burruss for a loss occasioned by the railroad company, it should, in justice and equity, succeed to whatever liability existed in Burruss's·favor against the railroad for such act. While there is no privity of contract between·the railroad company and the insurance company, yet it has been held on the highest and most satisfactory authority that the insurer is *practically* the surety for the railroad company, the principal. And whenever the insurer has 'indemnified the owner for the loss, he is entitled to all the means of indemnity which the satisfied owner held against the party primarily liable. His right rests upon familiar principals of equity. It is the doctrine of subrogation, dependant, not at all upon privity of contract, but worked out through the right of the creditor or owner.'

[Hall v. Railroad, 13 Wall. 367; L. & G. W. Co. v. Ins. Co., 129 U. S. 397, 462; The Potomac, 105 U. S. 630; R. R. v. Rogers, 76 Va. 443; Hart v. R. R., 13 Met. 99.]"

The measure of defendant's liability, either to the coal company or its subrogated insurer, was the actual value of the destroyed and damaged property at the time of the fire.

It is argued by plaintiff that the court erred in receiving evidence of sales made by the coal company of houses in the camp similar to those destroyed. The evidence was clearly admissible under the rulings of the Supreme Court in Railway v. Clark, 121 Mo. l. c. 185; Markowitz v. Kansas City, 125 Mo. l. c. 490; Matter of Forsyth Blvd., 127 Mo. 417. It is said in the Clark case: "We think the evidence of sales of similar property to that in question, made in the neighborhood, about the same time, was admissible to aid the jury in determining the damage to which the owner was entitled. The value of property is ascertained largely from such sales, and the opinion of witnesses as to values are largely predicated upon them. It is best, when it can be done, to put the jurors in possession of all the facts from which values are ascertained, and allow them to draw the conclusion therefrom. Witnesses basing their opinions upon recent sales, of like property, are liable to exaggerate or underestimate values; in any consideration they are no more capable of deducing fair conclusions from the known facts than the jury . The object is to ascertain the general market value, and if particular sales are made under exceptional circumstances the fact can be shown, and the jury can determine its probative force."

It is possible, as suggested by plaintiff, that the coal company put the houses on the market for sale at a price less than their actual value but the fact that the company priced and sold the houses at thirty-five dol-

lars each is very persuasive evidence that they possessed no greater value.

Plaintiff complains of the use of the term ''reasonable value'' in the instructions and cites us to a judicial utterance to the effect that an attempt to give a specific meaning to the word ''reasonable'' is ''trying to count what is not number and measure what is not space.'' [Altschuler v. Coburn, 38 Neb. l. c. 890.]

This is more epigrammatic than sound or practical. A term that has the sanction of universal common usage and has a well-defined and settled meaning to the common understanding should not be too critically analyzed and condemned nor given a technical meaning when used in judicial proceedings. ''Reasonable worth'' or ''reasonable value'' are terms which have a definite and common meaning to people of ordinary information and understanding and their use in instructions relating to the issue of the market value of property should not be condemned as reversible error. [Matthews v. Railway, 142 Mo. l. c. 655; Land Co. v. Railroad, 123 Mo. App. l. c. 408.]

In the Matthews case, it is said in a syllabus that ''in such an action the measure of damages is the reasonable worth of the barn and its contents at the time of the fire.'' We have noted the allegation of plaintiff in the petition that the ''reasonable cash value'' of the property was twenty-four hundred dollars. Where experts as well as laymen use the term in the same sense and to convey the same thought, it is impossible to think the jury could have been misled by it.

In his opening statement to the jury counsel for defendant said: ''There is something awfully strange took place in this case, there is a nigger in the woodpile some place and just who put the nigger there, I don't know.'' Counsel for plaintiff objected and then immediately added, ''If the court please, I don't know whether those matters are proper matters in the opening statement or not, they savor of argument, but if

Mr. Miller produces such facts, we have no objection, there will be no injury, I guess."

The evidence shows that the coal company had its main office in New York, that the policy was procured there and that the loss was settled in that city according to the terms of the policy and without objection or delay on the part of plaintiff.

In the closing argument counsel for defendant again remarked that "there was a nigger in the woodpile" and explained what he meant by that homely colloquialism by asserting, in substance, that the gross over insurance of the property and the amount and the prompt and apparently amicable settlement of the loss must have been due to some close relationship between the executive officers of plaintiff and the coal company. Though no issue of fraudulent over-insurance was raised by the pleadings, we think the argument was fairly within the scope of the contested issues. Plaintiff was contending that it insured the houses at their reasonable value while the evidence of defendant strongly tended to show that the property was insured at seven times its real value under circumstances indicating, at least, a lack of business judgment or diligence on the part of the insurance company. On the hypothesis that the houses were worth only thirty-five dollars each, it is difficult, under all of the facts and circumstances in evidence to account for the conduct of the plaintiff in issuing a policy on such a gross overvaluation without ascribing to its officers negligence amounting to recklessness, or some ulterior motive not disclosed on the face of the transaction, but fairly inferable from all its facts and circumstances. Defendant had the right to give to the jury its views, based on evidence, of the reason for the great disparity between the two valuations. The argument was legitimate and the objection to the closing argument was not well taken.

The motion of defendant to retax the costs being filed at the term the judgment was rendered was timely and was properly sustained. [Sec. 1965, R. S. 1909.]

Finding no reversible error in the case the judgment is affirmed. All concur.