of the towns of Candor and Owego, they are entitled to the certificate and approval provided for in the section quoted. It is suggested by the learned counsel for the plaintiff that no such defense was asserted in the answer. It was not necessary to set up this defense. It was a part of the plaintiff's cause of action to allege and show the certificate and approval of the state officers, and hence the defendant could, as it did, take advantage of the omission of the plaintiff to allege and prove such certificate and approval on the trial.

Without considering other questions raised, we are of opinion that the judgment should be reversed, with costs, and the complaint dismissed. All concur.

---

(11 App. Div. 50.)

JAMIESON et al. v. NEW YORK & R. B. RY. CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1896).

1. RAILROADS—NEGLIGENCE—FIRES.
   A finding that a fire was caused by defendant railroad company's negligence was sustained by evidence that the fire broke out immediately after defendant's engine had passed; that the engineer, soon after, examined the engine, and found that the door in the spark arrester had fallen down, permitting sparks to escape freely; and that on previous occasions the engine had thrown sparks.

2. SAME—EXPERT TESTIMONY—COMPETENCY OF WITNESS.
   A locomotive engineer is competent to testify as to the possibility of the door in the spark arrester coming open after it has been properly closed.

3. SAME—SPARK ARRESTERS.
   Testimony as to the distance sparks would be thrown by the locomotive alleged to have caused a fire if it had a properly constructed spark arrester, in good order, was admissible.

4. SAME—DAMAGES—PLEADING AND PROOF.
   Evidence of the depreciation in value of realty arising from the destruction of buildings by a fire set by defendant's locomotive was admissible under a complaint alleging that plaintiff owned the lands on which the buildings were situate, and a bill of particulars of the items of the loss which included the buildings.

5. SAME—VALUE—EXPERT TESTIMONY.
   A witness who was engaged in the manufacture of ice, and had received estimates for the construction of, and had purchased, an ice machine similar to the one the value of which was in question, was competent to testify to the value of the latter; such machines having no market value.

6. SAME—ESTIMATE OF VALUE.
   The fact that a witness, in stating the value of property destroyed by fire, included an amount that he had been told was the cost of an ice machine which had been burned, was harmless error, where there was competent evidence of the separate cost and value of such machine.

7. SAME—INTEREST—PROVINCE OF COURT.
   In an action for the destruction of property by fire negligently set, an instruction that plaintiff should be allowed interest on the value of the property was erroneous, the allowance of interest being for the jury alone.

8. WITNESS—IMPEACHMENT.
   Plaintiff's buildings were destroyed by fire claimed to have been set by sparks from defendant's locomotive. The engineer testified that, a few moments after the fire broke out, he examined the engine, and found that the door in the spark arrester had come open, allowing sparks to pass freely. The fireman testified that that discovery had been made before the fire, and

denied having made a statement that the door was found open after the fire. *Held*, that evidence of the prior conflicting statement was admissible for the purpose of impeachment.

Appeal from trial term, Queens county.

Action by John Jamieson and John A. Bond against the New York & Rockaway Beach Railway Company. From a judgment entered on a verdict for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Modified.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William C. Beecher, for appellant.

James W. Covert, for respondents.

BROWN, P. J. The plaintiffs, on July 23, 1893, were the owners of certain real estate, with the buildings thereon, at Holland's Station, in the county of Queens, where they carried on business as dealers in ice, coal, wood, hay, etc. There was upon such premises, contained in one of the buildings, an ice machine and plant for the manufacture of ice, but which had not been in operation for a year prior to the date of destruction of said buildings. On the date aforesaid, about 4 o'clock in the afternoon, the buildings and machinery and other personal property thereon were destroyed by fire; and it was the plaintiffs' claim at the trial that such fire was caused by sparks and cinders cast upon the buildings by one of the locomotives of the defendant railroad. The plaintiffs recovered a verdict at circuit for the sum of $29,825, and from the judgment entered thereon the defendant has appealed to this court.

The testimony permitted the conclusion that a locomotive, in charge of Engineer Olin, known as "No. 11," which was drawing a train going to Rockaway Park, and which passed the plaintiffs' property about 4 o'clock, emitted the sparks which caused the fire. Olin himself testified that he first saw the fire about seven minutes after he passed the plaintiffs' premises, and while his engine was upon the switch at Rockaway Park, and that soon thereafter he examined the spark arrester in the engine, to ascertain whether it was his engine that had set the fire or another. The spark arrester in his engine consisted of a wire netting in the forward part of the smoke arch, in which there was a door about 18 inches wide, and $2\frac{1}{2}$ feet long. This door was kept in position by a pin and a split key. When Olin examined his engine, he found the door in the netting down, and the key in the bottom of the smoke box. The key was not broken, and Olin shut the door, and put the key back in its place. The effect of the door in the spark arrester being down was to permit sparks and cinders to pass freely from the smokestack into the open air. How long this door had been down was not shown at the trial, but there was testimony in reference to sparks being thrown out by this engine at various times prior to the fire, which permitted the inference that the spark arrester had been out of order for a considerable period of time; and this evidence, we think, clearly supported the conclusion that the fire was caused by the negligence of the railroad company.

The question asked by the plaintiffs' counsel of some of his witnesses, whether there was any danger or possibility of the key which

held the door in the spark arrester in position falling down, in the operation of the engine, if once put in position, was proper, and the objection thereto was properly overruled. The means of fastening the door was a mechanical contrivance, the effect and operation of which was apparent to any one observing it. The witnesses of whom the question was asked were engineers, familiar with the mechanism, and having knowledge of the proper mode of its operation; and, in answering the question, they testified only to a fact which was within their knowledge and experience. Likewise, the objection to the question as to whether sparks would be thrown a considerable distance if the locomotive had a properly constructed netting, in good order, was properly overruled. Similar questions were held to be admissible in the case of Brush v. Railroad Co. (recently decided in this court) 42 N. Y. Supp. 103. But, in view of the fact that it appeared that the door in the netting was down at the time of the fire, these questions do not appear to be very material, as the view is permitted that the locomotive known as "No. 11" had had no adequate means to prevent the escape of cinders and sparks for some considerable period prior to the fire.

The point taken by the appellant's counsel that, in giving evidence of injury done to the realty, the plaintiffs were permitted to go outside of their complaint and bill of particulars, does not appear to be well taken. The allegations of the complaint were that the plaintiffs were the owners of lands adjoining the railroad, upon which they carried on business in certain buildings thereon, consisting of an ice manufactory, storehouse, stable, hay, and feedhouse, and office, and toolhouse; that upon the day of the fire there was in and about said buildings and premises a large quantity of personal property, of which a list was thereunto annexed, marked "Schedule A." This schedule enumerated all the items of the alleged loss, and included within it stables, feedhouse, and other buildings, which were clearly a part of the real estate. The appellant objected to testimony as to the difference in value between the value of the land and the buildings before the fire and after. The buildings destroyed were clearly a part of the realty, and evidence of the general depreciation of value arising from their destruction was clearly admissible. But, in addition to this testimony, the plaintiffs proved the value of everything that was claimed to have been destroyed, including the buildings; and I fail to see how in any respect the defendant was prejudiced by the admission of the testimony objected to.

The competency of some of the witnesses sworn as to the value of the property destroyed was also objected to. on the ground that, in stating the value of the lands with the buildings thereon and the ice machine, they were permitted to include in their estimate what they had been told was the cost of the ice machine. We are of the opinion that the admission of this testimony was not such an error as to call for a reversal of the judgment. The ice machine was not an article which had a market value, and its cost was a matter of estimate and calculation. Mr. Murray, one of the witnesses called by the plaintiffs, was not without some knowledge on that subject, as he was in the business of manufacturing ice, and had received bids and estimates from contractors furnished to him to construct an ice machine on his own property, and had purchased and erected one thereon. But both

the witnesses Murray and Holland were competent to testify as to the value of the land and buildings, and including in the general estimate an amount which they had been informed had been paid for the ice machine was not misleading or prejudicial to the defendant. It appeared by other competent proof what the original cost of the machine was, and what had been expended thereon for repairs, additions, and improvements. That is the best testimony that could be produced by the plaintiffs as to the value of this part of the property destroyed, and the fair and proper allowance to be made therefor was, on the evidence, a question for the jury to determine. The verdict was large, but we cannot say it was excessive. The court instructed the jury to give the value of the buildings and machinery, and that they should make allowance for all depreciation needful, and ascertain the exact value at the time of the fire; and the amount allowed is not so large as to justify our interference therwith.

The appellant also objected to the proof of statement made by one Pearsall, who was a fireman upon engine No. 11 at the time of the fire, as to the door in the spark arrester being down. This proof was not introduced as evidence of the fact stated by the fireman, but to impeach his testimony. Pearsall had been called as a witness by the defendant, and had testified that the time when Olin, the engineer, found the door in the spark arrester down, was before the fire, and not after, as Olin had testified. Upon cross-examination he was asked if he had not told Benjamin Ryder that the door was down, and had been put up after the fire, and he denied making such statements. Ryder was thereupon called as a witness by the plaintiffs, in rebuttal, and was permitted to testify to a conversation with Pearsall in reference to the door being down. This evidence was admissible to impeach Pearsall, and the objection taken to its reception was properly overruled.

The court, however, instructed the jury that, when they had determined the value of the property destroyed, they should cast the interest thereon from the date of the fire to the date of the trial, and include such interest in their verdict. This instruction was excepted to, and was clearly erroneous. The rule applicable to actions to recover in tort for unliquidated damages is that the jury may award interest, but are not compelled to. Duryee v. Mayor, etc., 96 N. Y. 477; Mansfield v. Railroad Co., 114 N. Y. 331, 21 N. E. 735, 1037; Brush v. Railroad Co., supra.

The trial of the action was on April 24, 1895, about one year and nine months after the fire. The plaintiffs may therefore stipulate to modify the judgment by reducing the verdict to $26,750; and, if such stipulation is filed within 20 days, the judgment so modified will be affirmed, without costs of appeal; otherwise, it must be reversed, and a new trial granted, costs to abide the event. All concur.