GIBBS, Respondent, v. ST. LOUIS AND SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

·St. Louis Court of Appeals, February 2, 1904.

1. **RAILROADS: Fires Caused by Locomotives: Circumstantial
Evidence.** A plaintiff, suing a railroad company for damages
caused by a fire alleged to have been set by sparks from a loco-
motive, is not to be defeated for lack of positive testimony on
the issue, if he proves facts sufficient to authorize an inference
that the coals or sparks from an engine of the company were
the source of his loss.

2. ———: ———: ———. But where there is no direct testimony
to prove the ultimate fact essential to plaintiff's recovery, and
circumstantial evidence is relied on, it must be of a kind to
fairly point to the existence of the essential fact; the court
must consider that the proven facts would tend to produce, in
impartial minds, according to common experience, a belief that
the unproven, but necessary, fact occurred.

3. ———: ———: ———: **Competency.** In such a case it is com-
petent to show that defendant's engine, had thrown fire far
enough to cause such an injury, and, by expert testimony, that
well-equipped engines generally would do so.

4. ———: ———: ———: **Setting Aside Verdict.** Where there
was no testimony that the train, which passed immediately be-
fore the discovery of the fire, threw sparks, nor testimony to
what extent defendant's engine ever threw sparks, nor opinions
of experts as to whether locomotives emit sparks large enough
to fly the distance of the burned building, 50 feet, and where
the evidence showed that three stoves in the house had fires
in them at the time, and that the house had caught fire pre-
viously in some manner other than from engine sparks, and
other slight circumstances tending to show the fire was not
caused by the engine, the evidence was insufficient to support
a verdict for the plaintiff.

Appeal from Crawford Circuit Court.—*Hon. L. B.
Woodside*, Judge.

REVERSED AND REMANDED.

*L. F. Parker* and *J. T. Woodruff* for appellant.

The demurrer to plaintiff's evidence should have been sustained for two reasons—the first, there was no evidence that the fire was communicated by one of defendant's engines, nor any facts from which such an inference might properly be drawn; the second, his own evidence showed as strong, if not a stronger probability that the fire started from sparks escaping from a "King heater," through a defective flue, and caught in the paper pasted to the studding and rafters in the upper story of the building, or to other combustible matter surrounding the flue. Peck v. Railroad, 31 Mo. App. 123; Sheldon v. Railroad, 29 Barb. 226; Otis Company v. Railroad, 112 Mo. 622; Peffer v. Railroad, 98 Mo. App. 291; Bates County Bank v. Railroad, 78 Mo. App. 330; Railroad v. DeGraff, 29 Pac. 664; 13 Am. and Eng. Enc. of Law, 512; Ireland v. Railroad, 44 N. W. 426; Wheeler v. Railroad, 67 Hun (N. Y.) 639; Railroad v. Morton, 3 Col. App. 155; Railroad v. Blatz, 114 Ind. 661.

*Clymer & Clymer* for respondent.

(1) The instructions given on behalf of the plaintiff rightly declare the law, and have been approved by the appellate courts of the State. Matthews v. Railroad, 142 Mo. 645; Hutchins v. Railroad, 97 Mo. App. 548. (2) There was sufficient evidence to warrant the submission of the case to the jury, and the court properly refused the instruction in the nature of a demurrer asked by the defendant. Kenney v. Railroad, 70 Mo. 243; Redmond v. Railroad, 76 Mo. 550; Torpey v. Railroad, 64 Mo. App. 382; Walker Bros. v. Railroad, 68 Mo. App. 465. (3) The doctrine is now well established that an appellate court will not disturb a verdict when there is evidence to support it. Neither will it undertake to weigh the evidence, and if there is sufficient testimony to warrant the submission of the case to the

jury, and proper instructions are given, the verdict is conclusive. Reed v. Ins. Co., 58 Mo. 421; McFarland v. Accident Assn., 124 Mo. 204; James v. Life Assn., 148 Mo. 1; Hull v. Railroad, 60 Mo. App. 593; Fullerton v. Carpenter, 97 Mo. App. 197; O'Mara v. Transit Co., 76 S. W. 680. (4) It must clearly appear that the trial court abused its discretion in passing on motion for a new trial on the ground of the insufficiency of the testimony before an appellate court will interfere. McKay v. Underwood, 47 Mo. 187; Lawson v. Mills, 130 Mo. 170.

GOODE, J.— Plaintiff's testator sued to recover damages for the burning of his house and furniture by a fire alleged to have been ignited by sparks emitted by one of defendant's locomotives. The cause stands now revived in the name of the plaintiff as executrix of her father's estate, he having died since it was instituted. The destroyed house was in the town of Leasburg, on the line of the defendant's railway and stood about fifty feet from the railway track, which, at that point, runs northeast and southwest. The house faced the track and was a story and a half structure, with a porch in front and extending around the corner a short distance on the east side. The testator kept a hotel, and a sign announcing that fact had been fastened to the roof of the porch; but, according to one of the witnesses, who was contradicted by another one, it had blown over and was lying on the roof the night of the fire. It is said the fire was started by a hot cinder from an engine catching against the sign. In the house that night were the deceased owner, Wm. A. Gibbs, his daughter, his son, and a wayfarer who had taken lodging with them. The fire was detected about one o'clock in the morning and at that time was burning on the northeast corner of the porch roof in a patch about one and one half feet wide and from two to three feet long close to, if not in contact with the roof of the house itself.

Plaintiff had judgment for $900 and defendant appealed.

The proposition relied on for a reversal of the judgment is, that the evidence was insufficient to carry the case to the jury; that is to say, on the facts proven, no inference was warranted that the fire was kindled by sparks from the engine of the train that is said to have passed through Leasburg a few moments before it was noticed.

Some facts in evidence obtrude themselves on the attention as especially important. There were fires in the house early in the evening in three stoves, the cook stove in the kitchen, a heating stove in the room where Mary Gibbs slept and a "King heater" in the room where the men slept. The latter was filled with wood when the family retired at nine o'clock and left burning. The building had caught fire previously in some manner other than from engine sparks. Notwithstanding the small patch of the roof that was aflame when the destructive fire was discovered, and though Mary Gibbs at once aroused her brother and the two tried to save the furniture, the building was so quickly enveloped in flames both inside and outside, that practically nothing of its contents was saved. Two bureau drawers and a feather mattress were gotten out, but those articles were not rescued; for Mary Gibbs testified that before they could be carried to a place of safety, they caught fire and were consumed. These facts argue that the house was on fire inside when flames were discovered on the roof. There was testimony that a mist had fallen during the preceding afternoon and that the night was cold; that only three or four minutes elapsed as the plaintiff swore, between the passage of the train and the discovery of the fire, and in that short interval the roof was blazing over a space three feet long and a foot and one-half wide.

Equally important is the lack of evidence to make the proof of defendant's responsibility at all satisfactory. There was no testimony that the train which passed immediately before the discovery of the fire threw out sparks, and no evidence tending to prove it did, except the statement of Mary Gibbs that it seemed to be a heavily-loaded train and the fact that the track runs through Leasburg on a rising grade. No witness saw the train. Neither was there testimony adduced to show that defendant's engines frequently, or ever, threw out sparks while on that grade, nor to what extent, if at all, they threw them, how large they were, or how far they flew. No testimony of a positive sort was adduced on that subject, nor opinions of experts as to whether locomotives emit sparks large enough to fly fifty feet and fall still burning. As the want of such testimony is the point on which the decision must turn, it is unnecessary to give a fuller digest of the evidence; for respondent's counsel does not contend there was any proof, either expert or direct, as to the emission of fire by locomotives.

A plaintiff suing a railroad company for damages caused by a fire alleged to have been set by a locomotive, can establish his case by circumstantial evidence that the fire was thus set, and is not to be defeated for lack of positive testimony on the issue, if he proves facts sufficing to authorize an inference that coals or sparks from an engine of the company were the source of his loss. Otis v. Railroad, 112 Mo. 622; Kenney v. Railroad, 70 Mo. 243, 252; Redmond v. Railroad, 76 Mo. 550; Sappington v. Railroad, 14 Mo. App. 86; Alexander v. Railroad, 37 Mo. App. 609; Torpey v. Railroad, 94 Mo. App. 291. In those cases, and in many others, the rule is declared as we have stated it. But the propriety of submitting to the jury the question of the railway company's responsibility has been affirmed in some instances and denied in others in the obedience to another rule of evidence, namely; that where there is no direct

testimony to prove the ultimate fact essential to a plaintiff's recovery, but proof of collateral circumstances is relied on, such circumstances must be of a kind to fairly point to the existence of the essential fact, to authorize the conclusion that it existed, or there is no case made for the jury to determine. A court must consider the positively proven facts as regards their tendency, according to common experience, to produce a belief in impartial minds that the unproven, but necessary, fact occurred. If the circumstances given in evidence have no tendency of that kind, they do not justify a submission of the cause to the jury; for the latter body's function is to weigh evidence which is relevant, material and possessed of probative force. The law regulates the admission of evidence during trials with reference to its pertinency to the issue as supporting one side of it or the other, excluding whatever has no bearing and receiving all that has. This policy obtains because of the presumption that the force of pertinent testimony, unweakened by admixture with irrelevant matter, will impel the minds of jurors to a fair conclusion about the truth of the issue to be determined. But when the evidence adduced by a party has no tendency, according to the experience and observation of men, to prove the main fact in dispute, the jury should not consider it; because its influence, if it exerts any, must be to stir surmises and conjectures as to the truth, instead of producing a sincere conviction. To say when, in the absence of direct eivdence on an issue, collateral circumstances bear on it and become competent evidence to be weighed by a jury, is a delicate and often a difficult task; and perhaps no where more difficult than in cases in which indirect proof is depended on to show sparks from a railway engine kindled a destructive fire.

In this case we face not only a lack of direct evidence to show sparks from the engine that was heard to go by after midnight, set fire to the decedent's house, but a lack of direct evidence to show sparks escaped

from it. The precise question for decision, therefore, is: Is it so generally known to persons of average intelligence that a locomotive drawing a heavy load on an ascending grade, throws sparks or cinders fifty feet away and hot enough to ignite the roof of a house if they happen to fall on one, that evidence on the subject may be dispensed with, and the jury assume, from their own knowledge, that this event can and does happen, and use the assumption as the basis for a finding that, in the particular case before them, it did happen? We regard that as the controlling question; though the appellant's counsel have laid more stress on there being several fires in the house and a defective flue; which circumstances, they contend, render it more probable that the conflagration was started inside the building than by coals from an engine. But, in our opinion, it was for the jury to determine whether the fire originated from some interior cause or from coals from a locomotive, if the absence of proof that the locomotive which was heard to pass, threw out fire, can be supplied by an assumption, based on common knowledge, that locomotives do emit fire under similar conditions—in other words, if the action of locomotives in that respect, belongs to the body of information about familiar and customary events, which men generally possess. If it does, the information takes the place of proof, and the case stands as though testimony had been introduced directly proving that the locomotive in question threw burning matter as far as the decedent's house as it passed through Leasburg, or testimony that defendant's locomotives frequently did so. When a fact is so generally known as to obviate the need of evidence about it, the knowledge is equivalent to proof. Lee v. Knapp, 155 Mo. 610. Now there was testimony adapted to induce a belief that the conflagration was of exterior instead of interior origin and the further belief that if it started outside, the burning matter which kindled it did not proceed from the flue of the house. The fire was first

detected on the roof, about eighteen feet from the flue, and in a direction from it contrary to the wind's movements. The latter circumstance is of slight weight, however; because on blustery nights, the wind often swirls around a chimney and blows sparks contrary to its main course. But these observations pertain to the province of the jury and show that the jury might properly have concluded the fire originated independently of any source in the house. If their right to draw that conclusion is allowed, it follows that they had the right to draw the conclusion that the house was ignited by fire cast from the locomotive the plaintiff heard pass, if they might do so without evidence that a locomotive will cast fire that will ignite a house fifty feet away. The rule of law as to whether or not a jury may take notice of such a fact should be applied, if we can ascertain it accurately as the rule for the decision of the present appeal. It ought to be further remarked that there was no testimony concerning the kind of engines in use by defendant and how thoroughly they were equipped with spark-arresters or appliances to prevent the escape of fire. We think it is generally known that all locomotives in use emit fire to some extent, and that inventors have not perfected any appliance which will entirely prevent the escape of sparks from them. Torpey v. Railroad, 65 Mo. App. supra. The Torpey decision is greatly relied on by the plaintiff's counsel as sustaining his contention that there is evidence enough to support the verdict in the present case. It is not stated in the opinion in that case that evidence was adduced of other fires in the vicinity of Torpey's house set by the railway company's engines about the same time; but such evidence was given by an employee of the company who worked on that section of the track, as we found by procuring the record. We think too, it is known, and may be taken for granted, that a locomotive drawing a heavy train on a rising track, will throw out more fire than at other times. But

that good engines will emit particles of burning fuel that will fly fifty feet and fall still burning, is a fact, if it be one, which, in our opinion, is not generally known to men of common intelligence and, therefore, must be established by testimony. If we are right about this, it devolved on the plaintiff to show, either that the defendant's engines had thrown fire as far as the destroyed house, or, expert testimony that well-equipped engines would do so. In every cognate decision we have seen in which the evidence, though not directly establishing that an engine set the fire, was held sufficient for the jury, there was testimony of one kind or the other—testimony either that the engines of the railway company had been seen to cast sparks and coals to the alleged distance, or to set out fires that far away, or that this might happen, according to the way engines work. Railway companies have frequently raised the objection to such evidence that it has no tendency to prove the fire which gave rise to the litigation, was started by an engine; but the point was invariably, we believe, ruled against them. See cases first cited, supra; also Railroad v. Richardson, 91 U. S. 454; Railroad v. Gilbert, 52 Fed. 711; Dunning v. Railroad, 91 Maine 87; Frisco Railroad v. Jones, 59 Ark. 105; Jamieson v. Railroad, 42 N. Y. Supp. 915; Brush v. Railroad, Id. 103; Frace v. Railroad, 22 N. Y. Supp. 958. Such decisions certainly determine the competency of evidence of the character stated, if not its necessity; and as evidence is incompetent, strictly speaking, when it relates to matters requiring no proof, the decisions go far toward determining that some evidence is necessary, in litigation like this, to show it was possible for the fire to have been started by sparks from an engine. Indeed they would be conclusive on the point but for the fact that the admission of testimony of the sort mentioned, if it is not strictly competent, might, nevertheless, not constitute reversible error. This cause is unlike those wherein it appeared the fire started on the right of way or very

close to the track; as it is unlike, those wherein there was no fire in the consumed building from which it could have caught. As to the propriety of testimony to show how far sparks of fire may be dispersed by a locomotive, there is an adjudication by the Supreme Court of New York in Jamieson v. Railroad, supra, and decisions less pertinent, but enough so to be germane, in the Bush and Frace cases, supra.

After we had advanced thus far with this opinion, we chanced to discover a decision on the very point of doubt by our Supreme Court, which, if we had found it sooner, would have relieved us of considerable labor. Campbell v. Railroad, 121 Mo. 341. In discussing the competency of evidence that other fires than the one involved in that action were set out by engines of the company, the court, speaking by Judge MACFARLANE, said:

"The only issue, involving the liability of defendant, was whether the fire was communicated to plaintiff's property directly, or indirectly, by a locomotive engine in use upon its road. Was this evidence admissible as tending to prove that issue? The question was sharply contested on the trial, whether the fire causing the damages did, in fact, originate from one of defendant's engines. The evidence was all circumstantial. It was important, then, to show that there was a possibility that sparks may have been thrown a distance sufficient to reach the building in which the fire originated, and that they contained heat enough to set it on fire. The facts that live sparks were thrown from engines, and did ignite grass, and other combustible materials, would tend to prove the probability that the fire was communicated from an engine. It was not shown that the engine, from which alone the fire could have been communicated, was constructed or manned with more care than all others in use on the road. The admissibility of such evidence was affirmed in Sheldon v. Railroad, 14 N. Y. 223, by a divided court.

''The court in that case says: 'The competency of this evidence has been directly decided in the English court of common pleas. Piggott v. Railroad, 10 Jur. 571; Aldridge v. Railroad, 3 M. & G. 515. These cases upon this point are well decided. The principle is essential in the administration of justice, inasmuch as circumstantial proof must, in the nature of things, be resorted to, and inasmuch as the jury can not take judicial cognizance of the fact that locomotive engines do emit sparks and cinders which may be borne a given distance by the wind. The evidence was competent to establish certain facts which were necessary to be established in order to show a possible cause of the accident, and to prevent vague and unsatisfactory surmises on the part of the jury.' This ruling was followed without division in Field v. Railroad, 32 N. Y. 339; Webb v. Railroad, 49 N. Y. 421.''

The judgment in plaintiff's favor must be reversed for lack of evidence tending to show fire emitted by a locomotive would fly to the roof of the decedent's house while so hot as to ignite the roof.

The defendant's counsel insist the case should not be remanded, as the plaintiff failed to introduce proof enough to establish a cause of action. But we think justice requires us to send it back to the circuit court, and thus afford plaintiff an opportunity to supply, if possible, the omitted proof. There is a difference between an appeal taken by a plaintiff from a nonsuit ordered because he failed to make out his case, and one in which the plaintiff did make it out to the satisfaction of the trial court, but the latter court was in error in so ruling. In the first instance the judgment is right on the record and can not be reversed; while, in the second, it is wrong and must be reversed, and in reversing it the appellate court may remand the cause for a second trial, if that course appears likely to promote a correct disposition of it finally.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.