Plaintiffs, husband and wife, sued to recover for the loss of their house and contents alleged to have been set on fire by sparks from a locomotive engine of defendant. The cause was tried to a jury and plaintiffs recovered. Unsuccessful in motion for new trial, defendant appealed.
The evidence is wholly circumstantial. Plaintiffs' house, a four room frame, stood on the east side and about 260 feet from defendant's track. There was a low or valley like place between the track and the house. The house stood on a hillside, but the railroad track was somewhat higher than the foundation of the house. The smokestack of defendant's locomotive on the track directly *Page 29 
opposite the house would, according to plaintiff's evidence, be a few feet higher than the top of the house. The house on the side next to the track was covered with shingles, and these were somewhat old and dry. The other side of the roof was rubberoid. There were two flues to the house, one the kitchen stove flue which was on the east side of the house, another flue was on the west side next to the track. The house burned between five and six o'clock in the afternoon of April 21, 1920. There had been no fire that day in the stove in the room next to the track. A fire had been in the cook stove at the noon hour — a big fire, Mrs. Riggins testified — but had gone out. The wind was blowing rather hard from the west to the east, or from the track towards the house. No one was in or about the house at the time the fire started, except two small children who were in bed. Mrs. Riggins was in a meadow north of the house, some 400 yards away when the train passed. Immediately after the train passed she noticed that the house was on fire at the end toward the railroad track and opposite from the kitchen flue. She ran to the house and got out the children. She stated the outside of the house, presumably roof is meant, burned first.
Defendant's evidence shows that on the day plaintiff's house was burned that its train passed over the track west of plaintiff's house just prior to the fire on the way from Neelyville to Doniphan; that for some mile or more before reaching plaintiff's house and on beyond the house toward Doniphan its track is down grade, and that when its train passed down this grade it was coasting, that the steam was not working, and that no sparks were escaping. That the engine was equipped with a spark arrester in good condition and that with the engine so equipped, and on the down grade, and not working the steam, no sparks could have been emitted or escaped. Defendant's evidence tended to show also that the wind was from the south or southwest. The trees and vegetation to the north of the house were scorched and burned more than anywhere *Page 30 
else about the burned house. A small wooden smoke house with shingle roof stood about 40 feet east of the house and was not burned. Defendant's brakeman was in the baggage car, and as the train passed plaintiffs' place he stepped to the door and says that he saw smoke coming out from the house as the train passed. He saw Mrs. Riggins in the meadow, waved at her and threw out a paper for her. The fireman testified that as they passed he saw smoke coming from the house. All the train crew testified that the train was coasting as it passed the house, and was not working the steam. Plaintiffs, over defendant's objection and exception, showed that the next morning as the train went out from Doniphan that it set fire to some grass on plaintiffs' premises, north of the burned house, but about the same distance from the track. Defendant meets this evidence by saying that this was on the up grade, and when the engine was working the steam.
The defendant assigns as error the refusal of the court to direct a verdict in its favor, and in admitting certain evidence over its objection.
In considering the demurrer we consider as true every material fact which plaintiffs' evidence tends to establish and every reasonable inference deducible therefrom. Plaintiffs established, therefore, that their house was burned; that defendant's train passed just before the house was discovered to be on fire by Mrs. Riggins; that the fire was first discovered "at the corner of the front part of the house," next to the railroad, and away from any flue; that the wind was strong and was blowing from the railroad track toward the house. It was not shown that the train was emitting any sparks as it passed the house, or near the house, or that any engine at any time had emitted sparks passing down this grade in the neighborhood of this house, or anywhere else on this grade when the train was coasting, and not working the steam. It was shown that sometimes the fire box was shaken down when coasting down this grade and that when this was done live coals and *Page 31 
cinders fell a distance of a few inches to the space between the ties. But there is no showing that such occurred on the occasion when plaintiffs' house was burned, or that if it had occurred that it was within the realm of reasonable probability or possibility that one of the cinders so dropped from the fire box could have been picked up and carried by the wind to plaintiffs' house. Plaintiffs were not required to establish by direct evidence that their house was set on fire from sparks or cinders from defendant's locomotive engine, but they were required to establish facts from which a reasonable inference is deducible that the house was so set on fire. Unless such facts were established the demurrer should have been sustained. [Gibbs v. Railroad, 104 Mo. App. 276, 78 S.W. 835.] The probative force of the evidence must be strong enough to induce in the minds of reasonable men, the jury, that the fire in fact originated from one of defendant's locomotive engines. It is not sufficient that it might have so originated. [Big River Lead Company v. Railroad,123 Mo. App. 394, 101 S.W. 636; Taylor v. Lusk, 194 Mo. App. 133, l.c. 139, 187 S.W. 87; Railroad v. Richardson, 91 U.S. 470.]
In Gibbs v. Railroad, supra, the destroyed house, a hotel, was in the town of Leasburg, and stood about fifty feet from the railroad. The house faced the track and was a story and a half high with a porch in front, which porch extended around the corner a short distance. A sign board was fastened to the roof of the porch, but there was evidence that this sign had blown over and was lying on the porch roof. It was claimed that the fire started from a cinder from a locomotive engine catching against the sign. The fire was discovered about 1 o'clock A.M. and at that time was burning on the northeast corner of the porch roof in a patch about one and one-half feet wide, and from two to three feet long, close to, if not in contact with, the roof. There were fires in the house early in the evening in three stoves. One of these was a king heater which was filed *Page 32 
with wood when the family retired. Other fact asppear in the opinion which brought forth from the court the remark that such facts argued that the house was on fire in the inside when the fire was discovered on the roof. The train had passed three or four minutes before the fire was discovered. Discussing this case and the facts the court said: "Equally important is the lack of evidence to make the proof of defendant's responsibility at all satisfactory. There was no testimony that the train which passed immediately before the discovery of the fire threw out sparks, and no evidence tending to prove it did, except the statement of Mary Gibbs that it seemed to be a heavily loaded train and the fact that the track runs through Leasburg on a rising grade. No witness saw the train. Neither was there testimony adduced to show that defendant's engines frequently, or ever, threw out sparks while on that grade, nor to what extent, if at all, they threw them, how large they were or how far they flew. No testimony of a positive sort was adduced on that subject, nor opinions of experts as to whether locomotives emit sparks large enough to fly fifty feet and fall still burning. As the want of such testimony is the point on which the decision must turn, it is unnecessary to give a fuller digest of the evidence; for respondent counsel does not contend there was any proof, either expert or direct, as to the emission of fire by locomotives." The court held in the Gibbs case that the evidence was not sufficient.
In Manning v. Railroad, 137 Mo. App. 631, 119 S.W. 464, the facts appear about as follows: Plaintiff's cottage was about fifty feet from the track, part of it on the right of way. It was a one story building of shingle roof, a porch in front covered with tin or sheet iron. The roof of the pocrh was against the eaves of the house. The fire occurred late in the afternoon. A woman a quarter of a mile away immediately after the *Page 33 
train passed saw a bright spot on the porch roof which she first thought was the sun light on the tin, until she noticed the sun was not shining, then she thought it was fire. The house was on the south side of the railroad and the wind was blowing from the track towards the house. Another witness a quarter of a mile away saw the fire about half an hour after the train passed. It was then a small fire on the roof of the main building above the porch and there was no fire around the flue. This witness saw no sparks. Another witness saw the fire half an hour after the train passed when the fire was not very large. She said it was burning down from the edge of the tin roof. This witness said sparks were being emitted as the train passed. She saw it throw sparks when climbing the grade before it reached the house, and after it left the depot, but did not notice sparks as it passed the house where the track was level. Another witness who lived within a hundred yards first saw the fire when it was about half way down the front side of the roof, and did not notice any sparks as the train passed. The tenant was at the depot a quarter of a mile away when the train came in, and as soon as it left, started for the house. He walked to the house, found a good fire in the stove, did a few chores and discovered the fire which appeared to be between the ceiling and the roof. Other witnesses gave evidence tending to show that the fire originated near the flue, and not at the edge of the porch near the roof. It was held that this evidence was not sufficient, because there was no evidence that any sparks were emitted as the train passed the house, and because there was no evidence tending to show "the possibility of the fire being ignited by sparks or coals thrown off by defendant's engines at the distance, whatever that may have been, it was seen to throw them, and some proof of this kind was required," citing Campbell v. Railroad 121 Mo. 340, 25 S.W. 936. *Page 34 
In Bates County Bank v. Railroad, 98 Mo. App. 331, 73 S.W. 286, the facts appear substantially as follows: The railroad ran east and west through a station named Nyhart on to the town of Butler, and passed within 150 feet of some hay ricks on the south side. Between the right of way and the hay was a green hedge fence about fifteen feet high. About twenty-five or thirty yards east of where the hay was stacked was a private roadway passing north and south over the railroad. This roadway was used by the farmers to haul hay from the bottom lands. A short time previous to the fire some hay had been scattered along this roadway to the railroad track. On the day of the fire a train passed east through Nyhart to Butler about 11 o'clock A.M. The track from Nyhart to Butler was on a slight grade, and at the time of the fire there was but a light wind. When the smoke was first seen it was south of the hedge and extended upward for some distance and then gradually moved towards the south, and that the hay between the ricks and where the roadway crossed the track and extending along the roadway a strip had been burned. The fire was discovered about an hour after the train had passed. There was evidence from persons who passed over the private roadway after the train passed and before the fire was discovered, and they testified they noticed no fire. It was held that this evidence was not sufficient. Discussing this case the court said: "There were other facts and circumstances that must be taken in connection with that which we have noted as constituting the total of plaintiff's testimony upon which it claimed a verdict, viz: The slight upward grade of defendant's track approaching the place in question; the entire absence of evidence that the train in question was a heavy one necessitating the exertion of more than ordinary power by the engine, usually resulting in sparks from the smokestack, or that it did emit such sparks. And *Page 35 
further, the undisputed testimony of witnesses Chipp and Scales, who passed along the private roadway over the scattering hay ten minutes or more after the passage of defendant's train, and stopping in the meantime to talk with Hensley in the proximity of the hay ricks, without seeing any smoke or fire, seems to rebut any inference, if any existed, that the engine set out the fire that destroyed plaintiff's hay."
Other cases of like or somewhat similar import to those we have mentioned are Peffer v. Railroad, 98 Mo. App. 291, 71 S.W. 1073; Fritz v. Railroad, 243 Mo. 62, 148 S.W. 74; and Peck v. Railroad,31 Mo. 123. Plaintiffs cite Hudspeth v. Railroad,172 Mo. App. 579, 155 S.W. 868; Campbell v. Railroad, 121 Mo. 340, 25 S.W. 936; Mathews v. Railroad, 142 Mo. 645, 44 S.W. 802, but we find no case upholding a verdict where there was no evidence that any sparks were emitted or nothing to show the probability that such was the case, such as an upgrade, heavy load, working steam, etc. It may be that plaintiffs' house and contents were destroyed by a fire caused by a spark or cinder from defendant's locomotive, but that such might have been the case is not sufficient. We are not overlooking the fact that plaintiffs' offered evidence tending to show that next morning defendant's locomotive set out a fire near plaintiffs' house and about the same distance from the track; but the conditions were not similar. The next morning the train was going up the grade, and was working steam when cinders will most likely escape. Merely because there may be no satisfactory evidence as to the cause of the fire is no reason why it should be assumed that it was caused by sparks or cinders from defendant's locomotive. It must be shown, the evidence being wholly circumstantial, that there is no other reasonable conclusion to draw as to the cause of the fire that destroyed plaintiffs' house other than that it was caused by sparks or cinders from defendant's *Page 36 
locomotive. The evidence adduced does not support that conclusion. The judgment below should be reversed and it is so ordered.
Cox, P.J., and Farrington, J., concur.