FARMERS ELEVATOR & GRAIN COMPANY v. WALKER D. HINES, Director General of Railroads, Appellant.

Division One, June 16, 1922.

1. FIRE: Sparks from Passing Engine: Substantial Evidence. Where the plaintiff's warehouse was forty feet south of the railroad track, evidence tending to show (a) that there was a heavy upgrade going east and that the engine was pulling hard and sending up great volumes of smoke; (b) that the engine had worked upon this track just before leaving town; (c) that it was pulling hard and pulling up and down the track; (d) that very shortly after the train left town two witnesses, who lived two or three blocks northeast of the warehouse, were at their homes and saw the fire and that it started upon the roof at the northeast corner; (e) that a few days before, fire had caught upon the roof of the elevator proper, which was however much closer to the track, from an

engine upon the same local freight train; (f) that there was at the time of the fire a strong northeast wind, and everything was dry, the time being in the afternoon of September 30th, and (g) that no machinery was running and no fire was being used in the building, was substantial evidence from which the jury might draw the inference that the fire came from the engine, and justified a submission of the case to the jury, at least upon the theory that a spark from the engine ignited the roof of the warehouse.

2. ———: ———: **Remote Dissimilar Fires.** Where the real issue in the case is whether sparks from defendant's passing engine ignited plaintiff's warehouse situated forty feet from the railroad track, at the northeast corner of the roof, at a time when a strong northeast wind was blowing, no one having seen sparks fall upon the roof, there being much testimony opposed to the theory that the fire originated on the roof, the train being of light tonnage and there being no evidence that the engine was puffing hard at the exact time the sparks were supposed to have been emitted, testimony by a witness that six or seven years previously sparks were carried from a railroad engine a greater distance to an old warehouse, there being no showing that it was the same engine or even of the same class of engines, and nothing as to the tonnage of the train except that it was having trouble in making the grade, is too remote and should not be admitted. In the absence of direct evidence, testimony to show defective construction or equipment or such use of engines as tends to show the possibility and consequent probability that the fire in question was set by defendant's engine, should be confined to other fires occurring under like conditions at or near the same time.

3. ———: ———: **Greater Probability: Preponderance of Evidence: Circumstantial Evidence.** Instructions which simply require the jury to find that it was more probable that the fire which destroyed plaintiff's warehouse came from defendant's railroad engine than that it was communicated in some other way, instead of requiring them to find from a preponderance of the evidence (which includes all facts and circumstances in evidence and the reasonable inferences to be drawn therefrom) that the fire was communicated by the engine, are erroneous, the burden being upon plaintiff to show that the fire was communicated from the engine. And where there is no direct testimony showing the origin of the fire, and the case is one of circumstantial evidence, the circumstances tending to show the liability of defendant must be such as to convince the minds of the jury that the fire was communicated from defendant's engine, and not be resolved by the instructions into a mere question of weighing possibilities.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED.

*J. F. Green, W. H. Meschede* and *Frank W. Mc-Allister* for appellant.

(1)   The court erred in refusing to give defendant's instruction in the nature of a demurrer at the close of plaintiff's evidence in chief.   All of the substantial testimony offered by plaintiff as to the place of origin clearly indicates that the fire started in the baled hay on the east side of the warehouse, and from twenty-five to thirty feet south of the northeast corner.   The mere fact that a locomotive passed near the property, and that shortly thereafter the fire was discovered, would not alone authorize the submission of the case to the jury. Fritz v. Railroad, 243 Mo. 77.   But these are the only ultimate facts plaintiff proved.   Even if it had been shown in addition that the locomotive was emitting sparks, still the plaintiff would not have been entitled to a verdict.   Slack v. Ry. Co., 187 S. W. 277.   A comparison of the facts disclosed by plaintiff's evidence in chief in this case with the facts involved in the following cases, and the application of the rules of law therein applied, are conclusive that plaintiff failed to make out a case.   Fritz v. Ry. Co., 243 Mo. 62; Riggins v. Railroad, 233 S. W. 67; Gibbs v. Railroad, 104 Mo. App. 276; Otis Co. v. Railroad, 112 Mo. 630; Bank v. Railroad, 98 Mo. App. 330; Peck v. Railroad, 31 Mo. App. 123; Manning v. Railroad, 137 Mo. App. 631; Funk v. Railroad, 123 Mo. App. 169; Slack v. Railway, 187 S. W. 275; Peffer v. Railroad, 98 Mo. App. 291; Bowden v. Railroad, 189 Mo. App. 148.   (2)   The court erred in giving plaintiff's Instructions 2 and 3.   By these instructions the case was submitted to the jury upon the theory that if it was more probable that the fire was communicated to plaintiff's property by one of defendant's engines

294 Mo.—41

than in any other way, the plaintiff was entitled to recover. While it recognized in general terms the universal rule that the burden of proof is on the plaintiff, it undertook to qualify that rule by saying that the burden was met by proof of facts and circumstances which might not be proof that defendant's locomotive actually communicated the fire to plaintiff's property, but which satisfied the jury that it was probably so communicated. The effect was to tell the jury that they might ignore the rule requiring plaintiff to prove the essential fact upon which defendant's liability depended, to-wit, that defendant's locomotive actually communicated the fire to plaintiff's property, and to find defendant liable upon a mere probability that the fire was communicated by the locomotive. 10 R. C. L. p. 898; 38 Cyc. 1750. Preponderance of the evidence is defined in Cartlich v. Met. St. Ry. Co., 129 Mo. App. 729. Other cases to the same effect are: Railroad v. Trimmell, 75 Ill. App. 591; Finch y. Day, 36 Atl. 909; Telegraph Co. v. James, 73 S. W. 82; Ewen v. Wilbur, 70 N. E. 578; Wilkinson v. Anderson, 79 Pac. 47; Fritz v. Railroad, 243 Mo. 76; 36 Cyc. 1755-1756; Taylor v. Lusk, 194 Mo. App. 133; Ins. Co. v. Lusk, 223 S. W. 809. (3) The court permitted witness Hicks to testify that some six or seven years prior to the trial sparks from a passing locomotive on defendant's railroad had set fire to another building. This testimony was objected to by defendant as too remote, but the objection was overruled by the court. The testimony was clearly incompetent. Tate v. Ry. Co., 210 Mo. App. 221; 33 Cyc. 1371-1372.

*R. S. Robertson* and *Fyke, Snider & Hume* for respondent.

(1) The court did not err in refusing to give defendant's instruction in the nature of a demurrer at the close of plaintiff's evidence in chief. Conner v. Mo. Pac., 181 Mo. 414; Mathews v. Railroad, 121 Mo. 298; Matthews v. Railroad, 142 Mo. 645; Campbell v. Railroad,

121 Mo. 340; Kennedy v. Railroad, 70 Mo. 243; Red-
mond v. Railroad, 76 Mo. 550; Fitch v. Railroad, 45 Mo.
322; Hudspeth v. Railroad, 172 Mo. App. 586; Lead Co.
v. Railroad, 123 Mo. App. 394; Talpey v. Railroad, 129
Mo. App. 88; Markt v. Railroad, 139 Mo. App. 456;
Kelley v. Railroad, 151 Mo. App. 307. Appellant's evi-
dence did not in any degree weaken the force of plain-
tiff's evidence, and hardly rises to the dignity of rais-
ing an issue of fact as to how the fire originated, hence
the court properly overruled appellant's demurrer to
the evidence at the close of the whole case. (2) Plain-
tiff's Instructions 2 and 3, have met the approval of this
court in every case in which the rule or *quantum* of
evidence required to sustain such issue as is raised in
this case has been considered. Marshall v. Ins. Co., 43
Mo. 586; Palston v. See, 54 Mo. 296; Rothschild v. Ins.
Co., 62 Mo. 356; Edwards v. Geo. Knapp & Co., 97 Mo.
432; State ex rel. v. Ellison, 268 Mo. 239; Stack v. Gen.
Baking Co., 283 Mo. 422; Fire & Marine Ins. Co. v.
Lusk, 205 Mo. 199; Miller v. Fireman's Ins. Co., 206 Mo.
App. 492; Garner v. Ins. Co., 200 S. W. 449; Smith v.
Burnes, 106 Mo. 94; Farmers Loan & Trust Co. v.
Southern Surety Co., 226 S. W. 935. (3) The admission
of the testimony of witness Hicks was not error. Shel-
don v. Railroad, 14 N. Y. 223; Field v. Railroad, 32 N.
Y. 339; Webb v. Railroad, 49 N. Y. 421; Railroad v.
Richardson, 91 U. S. 470; Smith v. Railroad, 63 N. H.
25; Railroad v. Gilbert, 52 Fed. 711; Thatcher v. Rail-
road, 85 Me. 509; Campbell v. Railroad, 121 Mo. 340;
Matthews v. Railroad, 142 Mo. 645; Lead Co. v. Ry. Co.,
123 Mo. App. 394. Under the undisputed evidence the
verdict was for the right party. The admission of that
evidence, even if it should not have been admitted, which
we do not concede, if it did not materially affect the
merits of the action, was harmless. Farmers Loan and
Trust Co. v. Southern Surety Co., 226 S. W. 935. And
so the statute provides. R. S. 1919, sec. 1513; Hogan v.
Railway, 150 Mo. 36; O'Neill v. Kansas City, 178 Mo.
102; Swope v. Ward, 185 Mo. 329; Hayden v. Gravel

Co., 186 S. W. 1195; Syndon v. Wagner Elec. Co., 285 Mo. 91; Loan & Trust Co. v. Surety Co., 285 Mo. 652. The evidence, aside from the testimony of Hicks conclusively establishes that defendant's engines did throw sparks, and to a sufficient distance to reach plaintiff's warehouse. The many reported cases decided by this court fully demonstrate the fact that engines do communicate fire to property along the railroad, to much greater distance than in this case.

GRAVES, J.—Action for damages. Plaintiff owned a grain elevator and warehouse at Sweet Springs, Missouri, on and near the right-of-way of the Missouri Pacific Railway Company. A line of the railroad operated by said company runs through the town of Sweet Springs, coming from the northwest and passing out in a southeasterly direction. To the west of the town is Davis Creek, and from thence to the southeast there was an up-grade in the track.

On September 30, 1918, the elevator, warehouse, and their contents (owned by plaintiff) were destroyed by fire. Plaintiff charges that such fire was communicated by a spark from an engine then in the use of the railroad, as then operated under the Federal Government. Damages were alleged to be $44,586.77, and an itemized statement thereof is made a part of the petition.

Upon motion all of the answer was stricken out except the general denial, and a trial before a jury resulted in a verdict for plaintiff in the sum of $40,000, upon which judgment was duly entered. From this judgment the present appeal was taken.

Questions urged go to the admission of evidence, the giving and refusing of instructions, the overruling of the motion for a new trial, and a supplemental motion for a new trial, the details of which can best be treated in the opinion. This outlines the case.

I.   It is strongly urged that there was not sufficient evidence in behalf of plaintiff to take the case to the jury, and for that reason the demurrer to the evi-

dence should have been sustained. This requires a more detailed statement of facts. It is not claimed that defendant's evidence especially patched out the case for plaintiff. If there was a case made for the plaintiff, it was from the evidence upon that side of the case, and not otherwise. Neither are we called upon to re-argue the rule of law upon the question. We do not understand the learned counsel for defendant to dispute the usual rule, i. e. that if there is substantial evidence tending to show liability, then the matter is a question for the jury. The facts are therefore the important thing upon the matter of the demurrer to the evidence.

As said, the Missouri Pacific Railway Company's railroad runs through Sweet Springs from the northwest toward the southeast. To the west of the depot some three or four blocks is Davis Creek. From this creek toward the southeast there was some grade upward. There were at least two tracks, in addition to the main-line track. At the depot the main-line track runs practically east and west. To the north of the main-line track was a passing track, and to the south was an industrial or commercial track, which served the elevator of the plaintiff. Parallel with, and about a hundred feet south of the railroad tracks, was Lexington Street, or avenue. Upon this street the warehouse of the defendant fronted. Through it ran two driveways, one upon the eastern side, and the other upon the western side. To the north of the western portion of the warehouse was the elevator, which was partly upon the railroad right-of-way, and within four or five feet of this south switch track. The warehouse, in which the fire started, only ran some sixty feet north from Lexington Street, and its north end was some forty feet south of the railway tracks. Some fifty feet east of the warehouse, and fronting on Lexington Street, was a mule barn. Between the two buildings (in this fifty feet), and to the northwest corner of the mule barn, was a small stable. There was a space of some thirty feet between this stable and the east side of the

elevator.    These we mention to show the open spaces there.

The train accused of the crime was a local freight, from the west, and arrived between four and five o'clock. It was a light train, and on this evening was pulled by a rather heavy engine.    It did some switching that evening, and with other work took out a car of wheat and put in a car of coal on this south switch track.    There is no direct evidence that in so doing it went as far east as the northeast corner of this warehouse.    Plaintiff contends that its evidence shows that there was a strong wind from the northeast, and that the fire began at the northeast corner of the warehouse.    That such fire was first observed about five minutes after the train backed to the west to the bridge over Davis Creek, and from thence pulled out of the town over the main line.    There is evidence of the puffing of the engine as it pulled out of town, but no evidence of any sparks being emitted therefrom.    There is evidence from two witnesses, who are connected with the plaintiff and who lived to the northeast of the elevator and warehouse some two or three blocks, that they were at their homes and saw the fire, and that it started upon the roof of the warehouse, at the northeast corner thereof.    Other testimony tended to show that the fire in fact originated in some baled hay, which was stored near the northeast corner of the warehouse, and spread from thence to the roof.    The evidence is therefore conflicting.    For the plaintiff it tends to show that the fire started upon the roof near the northeast corner of the warehouse.    For the defendant (including some witnesses introduced by plaintiff) it tended to show that it started from within in this baled hay.    There was evidence that the driveway door was open, introduced evidently for the purpose of showing that sparks might have passed through it and reached the hay, some distance toward the south.    To this theory there is not much substance.    To the theory that it caught upon the roof from a spark from the engine there is more substance, and this we discuss later, with other pertinent facts.

II.  One of the real questions in the case was whether the fire started in some hay in the warehouse, and from thence to the roof and over the building, or whether it caught upon the roof, near the northeast corner of the warehouse.  If it caught in the hay there was less reason to believe that it could have come from the engine of the train.  This, because the hay was some distance back from the northeast corner of the warehouse, and the only way a spark from the engine could reach the hay would be (1) to come in at the north door of the east entry-way and travel back on a level to this baled hay which was stored some distance above the floor; (2) to have whipped upward under the eaves of the roof and passed through openings there, or (3) the bare chance of going through some alleged small cracks in the eastern wall of the building, a thing rather improbable when the building ran north and south and the wind was from the northeast.

**Substantial Evidence.**

However, upon this demurrer to the evidence, we need not discuss this theory of the case, although the preponderance of the evidence tends to show that the fire caught in the hay (upon the inside) rather than upon the roof.  There is substantial evidence tending to show (1) that there is a heavy up-grade going east, and that the engine was pulling hard, and sending up great volumes of smoke; (2) that the engine had worked upon this switch track just before leaving town; (3) that it was pulling hard in pulling up and down the tracks; (4) that very shortly after the train left the fire appeared, and first appeared *on the roof* near the northeast corner of the warehouse; (5) that a few days before fire had caught upon the roof of the elevator proper, from an engine upon this same local train, as we gather the facts, and (6) that there was a strong northeast wind, and that everything was dry.  From these facts a jury might draw the inference that the fire came from the engine, in view of the further fact that no fire was being used in the building.  No machinery was running.

The facts justified a submission of the case to the jury —at least upon the theory that a spark from the engine ignited the roof of the building. It might have strained credulity to have found that a spark from the engine reached this hay through either of the avenues suggested above. But a jury might have believed the two witnesses who said that the fire first caught upon the roof. It suffices to say that at least upon that theory the evidence made a case for the jury.

III. As decided above there was some substantial evidence that the fire started upon the roof of the warehouse, and not in the hay upon the inside. It is upon this theory that we think the case should have gone to the jury. The demurrer to the testimony being thus disposed of, the errors in the course of the trial become material.

Other Fires: Remoteness.

In the course of the trial, and over the objections of defendant, a witness, Hicks, was permitted to testify as to a fire being communicated to an old warehouse by an engine, some six or seven years previous. He was also permitted to testify that upon that occasion sparks were carried from the railroad track further than the northeast corner of the warehouse which was burned upon this occasion. There was no claim that it was the same engine or even the same class of engines. There is much testimony in this case as to the light tonnage of the train involved here, and nothing as to the tonnage in the train that Hicks saw, save and except it was having trouble to make the grade. There is no evidence in this case that this train was having trouble in making the grade, except that it was puffing hard as it went out eastward. This testimony was too remote, and should not have been admitted. The general rule is thus stated in 33 Cyc. pp. 1371, 1372:

"In the absence of direct evidence, evidence that other fires originated from defendant's engines under like conditions at or about the same time, either before or after the fire in question, is generally admissible as

tending to show a negligent habit on the part of defendant company in the construction, equipment, and management of its engines and therefore as tending to show such negligence in the particular case, or as tending to show the possibility and consequent probability that the fire was set by an engine of defendant, especially where the particular engine which caused the fire is not identified. This class of testimony, however, should be confined to other fires that occurred at or near the place of the fire complained of, at or about the same time, and which began on defendant's roadway, or were caused by defendant's engines, and it should also appear that the engines used by defendant when such fires occurred were of the same construction, used in the same manner, and in the same state of repair as the engine used at the time of the fire complained of. Evidence of other fires on defendant's right of way is also admissible to show negligence in allowing combustible material to accumulate on the right of way; but it is inadmissible to show negligence in permitting fire caused by defendant to escape from its right of way.''

Of course by statute in this State it is not required to prove the negligence of the defendant in fire cases. [Mathews v. Ry. Co., 121 Mo. 298; Campbell v. Ry. Co., 121 Mo. 340.] It is sufficient if the evidence shows that the fire was communicated by the railroad. But it is required that there should be proof showing or tending to show that the fire was occasioned by a spark from defendant's engine. All this, as announced in the cases, supra, does not change the general rule as to the admissibility of evidence in the attempt to show that fire was communicated from the engine. Remoteness of the incident proven is the thing which goes to the admissibility of the evidence. We think it quite firmly fixed by the rulings that the evidence should be limited to within a reasonable time of the alleged time of the fire occasioning the damages. Six or seven years is not a reasonable time under the facts in evidence in this case. There are many things to be considered in determining the admis-

sibility of remote instances of fires. The rule we think is well expressed in Tate v. Ry. Co., 209 S. W. 1. c. 980, 981, whereat the St. Louis Court of Appeals says:

"Appellant assigns as error the admission of the testimony regarding other fires said to have started in plaintiff's orchard and garden approximately two or three years prior to the fire here in question, and that of the witness Hooper in regard to the starting of fires in a pile of saw dust, nearly four years prior to the fire in question, at a point on defendant's road a mile and a half from plaintiff's house. The testimony regarding these fires, we think, should not have been admitted under the circumstances. It is true that evidence that other fires were set out by sparks from defendant's engines may be admissible, as tending to make it appear probable that the fire in question was so started. [Campbell v. Railroad, 121 Mo. 340, 25 S. W. 936, 25 L. R. A. 175, 42 Am. St. 530; Matthews v. Railroad, 142 Mo. 645, 44 S. W. 802.] But such evidence, we think, should be confined to other fires occurring reasonably near the time of the fire complained of, unless a series of continued occurrences of this sort be shown. The evidence here in question, we think, is too remote, since the other fires referred to by the witnesses were isolated fires occurring approximately from two to four years prior to that complained of. There is no showing as to the appliances used by defendant on its engines at the times when such are said to have occurred; and such fires may have occurred, if at all, under circumstances quite different from those present on September 18, 1914. We know of no authority to justify us in holding that evidence alone of isolated fires occurring so long prior to that in question is admissible as tending to prove the ultimate fact in issue. The authorities which we have found on the subject are to the contrary. [Dillingham v. Whitaker, 25 S. W. 723; Galveston Ry. Co. v. Rheiner, 25 S. W. 971; L. & N. Railroad Co. v. Miller, 109 Ala. 500, 19 So. 989; 33 Cyc. 1371, 1372; Davidson v. St. Paul Ry. Co., 34 Minn. 51, 24 N. W. 324; Henderson v.

Railroad Co., 144 Pa. 461, 16 L. R. A. 299, 27 Am. St. 652.]"

We conclude that the trial court was in error in the admission of this evidence. Nor are we prepared to say that it was harmless. The place on the roof at which two witnesses say the fire started was quite a distance from the engine as it passed east on the way out of town. There were twenty-three feet intervening between the main line track and the south switch track, and some forty feet from the south switch track to the north end of the warehouse, and in addition there would be the distance from the extreme northeast corner to the actual place of fire. Much testimony was opposed to the theory that it caught upon the roof at all. The testimony of Hicks tends to emphasize the distance sparks had carried from a previous engine of defendant. Such testimony could well have played an important part in the disposition made of the case by the jury. We cannot say that it was not prejudicial. We think it was, and its admission was error.

IV. Complaint is made of Instructions 2 and 3 given for the plaintiff, which read:

"2. The court instructs the jury that while the burden of proving that the fire which destroyed or damaged plaintiff's property was communicated to the property by an engine being operated by defendant, yet such fact may be proven by evidence of such facts and circumstances as will reasonably satisfy the jury that it is more probable that the fire was so communicated to such property by defendant's engine than in any other way.

"3. The jury is instructed that one of the questions submitted to them is whether the fire was communicated to plaintiff's property by an engine used and operated upon the Missouri Pacific Railroad by defendant. In deciding this question the jury must take into account every fact and incident in relation to the fire and the surrounding circumstances attending same as are detailed in evidence, and decide according to what

they may consider the most probable conclusion. The question in this case is merely a question of greater or less probability as to the origin of the fire, and while the burden is upon the plaintiff to prove that the fire which destroyed the property or damaged same, if .you find from the evidence · same was so destroyed or damaged, was communicated thereto by an engine of the defendant, but the plaintiff is not required to establish such fact by direct or circumstantial evidence, as will reasonably satisfy the jury that it is more probable that the fire was so communicated by one of defendant's engines than that it happened in any other way.''

These instructions do not require the jury to find from a preponderance of the evidence (which of course includes all facts and circumstances in evidence and the reasonable inferences to be drawn therefrom) that the fire which destroyed the property came from defendant's engine, but simply required the jury to find that it was more probable that the fire was so communicated, than from some other source. These instructions are wrong. They only require the jury to measure probabilities. The question for the jury to decide in all such cases is whether or not defendants' engine communicated the fire. The burden is upon plaintiff to so show. Whilst the proof may be circumstantial, yet that does not change the rule that plaintiff must show that the fire occasioning the damage came from defendants' engine, nor change the rule that the burden is upon him to show such fact by a preponderance of the evidence. In Fritz v. Railroad, 243 Mo. l. c. 76, LAMM, J., has well said:

''Observe, while negligence is no longer a factor, and plaintiff is relieved from the burden of charging or proving it, yet he still carries a burden. He cannot recover by mere proof of a fire and the presence of locomotives on a railroad. He must still charge and prove that the fire was actually communicated to his property by one of defendant's locomotives in use on its road. Failing in that, he is cast as a matter of law.''

Not only so, but where there is no direct testimony, and the case is one of circumstantial evidence, then the circumstances tending to show the liability of the defendant must be such as to convince the jury that the fire was communicated by defendant, and not otherwise. In other words, the jury in weighing all the facts and circumstances must be able to conclude in their own minds that the fire was from the engine of the defendant, before damages should be assessed against defendant. When the jury is so able to conclude, this of course enables such jury to exclude all other theories of the fire. It is not and should not be a mere question of weighing probabilities, but the prime question should be, do the facts and circumstances in evidence convince the jury that defendant occasioned the fire. [Fritz v. Railroad, 243 Mo. l. c. 77-78.]

In Taylor v. Lusk, 194 Mo. App. 133, Sturgis, J., has carefully reviewed the law, including the Fritz Case from this court, supra. In concluding he says:

"For the plaintiff, on whom is the burden of proof, the instructions should require a positive finding that the defendants' engine set on fire the plaintiffs' mill. A mere finding that such cause is more probable than any other is not sufficient to fix liability. The objection to and danger in proving a fact by circumstantial evidence is that it is based on deductions from other facts, and that all the facts not being known a wrong conclusion is possible, if not probable. It would render proof by such evidence far more dangerous to not require the jury to make a finding that the ultimate fact is true, but only that such is more probable than anything else."

At page 137 of the same case, it is said:

"It will be noticed, however, that the instruction first mentioned, given for plaintiffs, directs a finding for them in case the jury found that the origin of the fire was more likely from the engine than from any other cause disclosed by the evidence; in other words, that plaintiff is entitled to a verdict whenever the jury finds that the evidence points to the engine as the most prob-

able source of the fire without requiring a finding that the engine did in fact start such fire. We think the jury should be required, in all cases, and especially so when the evidence is purely circumstantial, to find that defendants' engine did in fact set fire to the destroyed property, and that there is a substantial difference between requiring the jury to find that the engine was the source of the fire and in finding that it was the most probable source. Here the jury were told to base their verdict on a finding 'that it was more likely that plaintiffs' mill was set on fire by an engine operated on defendant's track than from any other cause,' without requiring a finding that it did do so. A jury might readily find that the engine was the most probable cause, but be unwilling to find that defendants' engine did, in fact, set the mill on fire; and no less a finding should be allowed in determining defendants' liability.''

We are cited by respondents to State ex rel. v. Ellison, 268 Mo. 239, as opposing our views above, and as opposing the Fritz Case. We do not so construe that opinion. Judge Blair was dealing with a civil instruction, which in effect required plaintiff to satisfy the jury beyond a reasonable doubt. It is not meant by that opinion that, where there is evidence tending to show two or more ways by which the fire might have been communicated, the jury might determine which of the two or more ways was the more probable, and find a defendant liable, although the jury might not think from the weight of all the evidence either way was the real or true way. We shall not discuss at length the divers other cases cited by respondent upon this point. The case of State ex rel. v. Ellison, supra, most certainly lends no support to the two instructions we have under review. Under these instructions the jury could find against the railroad, because of the different theories of the fire, if it was thought that it was more probable that the fire was communicated by its engine, than in the other way, and yet not be satisfied by the preponderance of the evidence that the fire was started by the railroad at

all. Such instructions are in the very face of the time-worn rule that the plaintiff must establish his case against the defendant by a preponderance of the evidence. There are some expressions in the cases which might be strained so as to lend some credence to these instructions, but we hardly think such language should be so construed. These instructions require the mere weighing of probabilities, rather than the judgment of the jury upon the vital question, i. e. has plaintiff shown by a preponderance of the evidence that defendant's engine set out the fire which did the damage.

Let the judgment be reversed and the cause remanded for errors pointed out. Other matters urged can well be taken care of upon retrial. All concur, except *Woodson, P. J.*, who is absent.