IVY S. BUTCHER ET AL., RESPONDENTS, v. ST. LOUIS-SAN FRANCISCO RAILWAY CO., APPELLANT.—39 S. W. (2d) 1066.

Kansas City Court of Appeals. Opinion filed May 4, 1931.

*Gossett, Ellis, Dietrich & Tyler* for respondents.

*E. T. Miller, Henry S. Conrad, L. E. Durham, Hale Houts* and *Ilus W. Lee* for appellant.

BLAND, J.—This is an action for damages for the destruction of plaintiffs' orchard alleged to have been caused by a fire set out by one of defendant's locomotives. There was a verdict and judgment in favor of plaintiffs in the sum of $2000. Defendant has appealed.

The facts taken in their most favorable light to plaintiffs show that plaintiffs were the owners of a tract of land consisting of eighteen acres adjoining the town of Grandview in Jackson county; that on the southeast corner of the tract was situated a house and two barns; that the north part of the tract, consisting of ten acres under fence, was in orchard which had not yet reached the bearing stage; that this orchard was in a healthy condition prior to the fire which occurred on March 30, 1925. The trees were set in rows thirty feet apart. A crop of corn had been raised between the tree rows during the season of 1924. The corn was planted and cultivated east and west which left spaces occupied by the rows of trees uncultivated and grown up in grass. Along the east side of the orchard, next to defendant's railroad right of way, there was a strip twelve or fifteen feet in width left when the corn was planted. This space had also grown up in grass. Defendant's railroad right of way, which was 100 feet in width from fence to fence with rails in the center, extended north and south alone the east side of and adjoining plaintiffs' tract of land. The right of way was free of vegetation, having been previously burned off.

The fire occurred between one and two o'clock P. M. At this time the occupants of the house were away and no one was upon the premises. The fire occurred ten to twenty minutes after one of defendant's freight trains going north passed the orchard. For some distance south of plaintiffs' land and along the side thereof the railroad ascends that one of the witnesses referred to as "a very steep grade" toward the north. The train in question was a heavy one and as it went up the grade at the place in question it could be heard laboring. The wind was blowing strongly from the east or northeast. The weather was dry and the grass was dead and dry. The fire caught near the northeast corner of the orchard along and next to the right of way fence. It then burned toward the south along the strip of dry grass next to the fence. As it came to the rows of trees it would burn toward the west along the dead grass in the rows. The fire was confined to the strip along the fence and the tree rows and did not burn over the ground that had been in corn.

No witness saw the locomotive start the fire nor did any witness testify to seeing any sparks being thrown on the day in question. In fact but two of the witnesses, outside of the train crew, saw the train at the time in question. One of these witnesses stated that he was half a mile away and paid no particular attention to the train. Another of them noticed that it was a freight train. He was close by when the train passed but he was not asked whether he noticed whether it was emitting any smoke or sparks at the time. The members of the train crew, testifying for the defendant, stated that no sparks were being thrown.

There is testimony that defendant's engines had thrown sparks prior to the time of the fire, but the witnesses either did not or could not give the time of the occurrences. Plaintiff, Ivy S. Butcher, testified that she had observed on many occasions, during the year of 1924, and the early part of the year 1925, sparks coming from defendant's engines as the latter were going north past the orchard and that she had observed sparks coming over the top of plaintiffs' barn; that she could not recall any fires having been started by these sparks. There is no testimony that any of the sparks, which any of the witnesses saw emitting from defendant's engines, set out any fire or were capable of doing so, with the exception of the witness, Wyatt, who testified that the corner of his pasture near the railroad was burned off at one time but the time was not stated except that it occurred "in the past years that I have lived there."

Defendant's testimony tends to show that the engine was equipped with a spark arrester consisting of No. 9 steel wire mesh, the spaces between the wire being about 3/16 of an inch; that the steel wires were not made of first class steel but were sufficient to prevent the escape of sparks; that soft coal with some sulphur content was being used in its locomotive in question; that it had been over-hauled in January, 1925, and was inspected on the day before and the day after the fire and found to be in perfect condition; that the train arrived at Grandview about 1:20 P. M. of the day in question; that it was a light train, threw no sparks and did not labor up the grade in question, which defendant's evidence tends to show was a "medium" grade.

The section foreman testified that he became foreman on the first day of March, 1925; that fires had been set out by engines along the right of way in the vicinity south of Grandview in his section since he had been foreman but not along where plaintiffs' property was situated. The trial was had on the first day of February, 1927. He did not state whether these fires had been set out from sparks from the flue of the locomotive or from the fire box. There is no claim that the fire in question was communicated from the fire box.

In behalf of defendant, two ladies, mother and daughter, testified to having seen a man set out fires in the orchard early of the afternoon of the day in question. These ladies lived just north of the orchard. They did not see the man actually light a fire but concluded that he was firing the orchard because he would stoop over and when he raised up smoke would immediately arise at his feet. The mother testified that when she first came out of her house she saw smoke arising from a point close to plaintitts' barn. This barn was located just south of the orchard and near the right of way fence. At this time she did not see any one in the orchard but went back into the house once or twice and on coming out the second or third time she saw a man, about seventy-five yards away in the northeast corner of the orchard, stoop down and when he would straighten up smoke would come up at his feet.

The daughter testified that she lived near her mother and about a block from the north side of the orchard; that it was between one and two o'clock P. M. when she noticed smoke coming up north of the barn; that she supposed someone was burning trash; that at this time she was standing in her kitchen door; that about fifteen or twenty minutes afterwards she saw a man about ten feet west of the right of way fence, walking north and stooping down at each tree row and as ''he would raise up the smoke would boom up;'' that the last time she saw him he was about half way across the orchard from south to north.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that there is not sufficient evidence tending to show that a fire was communicated by its locomotive. Of course, there is no direct evidence that the fire was so communicated but in our opinion there is circumstantial evidence sufficient to establish that fact. Although it is true, as claimed by defendant, that in order to do so, this character of testimony must amount to more than mere speculation and guess. It was not sufficient for plaintiffs to show that it was more probable that the fire was so communicated but that it, as a matter of fact, was so communicated. [Farmers Elev. & Grain Co. v. Hines, 294 Mo. 639, 652.]

The evidence in this case shows that one of defendant's freight trains passed the orchard fifty feet away shortly before the fire was discovered; that it was going up a steep grade; that it was a heavy train and was laboring; that it was burning soft coal; that the weather was dry; that a high wind was blowing from the railroad right of way toward the orchard; that the vegetation in the orchard consisted of dry grass and was readily inflammable; that the fire caught next to the right of way and burned away from it in the direction the wind was blowing.

While there was testimony tending to show that the fire was communicated by another, that testimony, under all of the circumstances, was for the jury to believe or disbelieve and, if the jury found that there was no other cause shown as to the origin of the fire, there was sufficient facts upon which to base a verdict at their hands, leaving out the testimony relative to sparks and other fires. [Farmers Elev. & Grain Co. v. Hines, supra; Diggs v. Wab. Railroad Co., 131 Mo. App. 457; Jones v. Chi. M. & St. P. Ry. Co., 204 S. W. 192; Chapple v. St. L. & H. R. Co., 284 S. W. 863; Alcorn v. Railroad, 284 S. W. 510.]

While there was no evidence that the locomotive in question threw any sparks at the time, the jury were authorized to find that a heavily laden train laboring up a hill, burning soft coal, might well throw sparks. [Erhard v. Railroad, 136 Mo. App. 617, 620, 621; Bates Co. Bank v. Railroad, 98 Mo. App. 330, 335.]

Defendant insists that the jury were not authorized to find that sparks sufficiently alive to set out fire under the circumstances could be carried fifty feet or more, as was necessary for them to find in this instance in order to return a verdict for plaintiffs, without some expert testimony to that effect or that a fire had actually been set out by a locomotive spark that had traveled that distance. In support of this contention defendant cites the case of Gibbs v. Railroad, 104 Mo. App. 276; Fritz v. Railroad, 243 Mo. 62, and similar cases. In these cases there was a strong probability that the fire was communicated from one that admittedly existed on the premises at the time. In the Gibbs case the court said, loc. cit. 284, 285:

"This cause is unlike those wherein it appeared the fire started on the right of way or very close to the track; as it is unlike, those wherein there was no fire in the consumed building from which it could have caught."

If the testimony of plaintiffs' witnesses, relative to the place in which the fire started, is true, as the jury had a right to so find, then the testimony of defendant's witnesses relative to a man setting out fire is either false or they were mistaken in their observation. Plaintiffs' testimony tends to show that the fire started at the right of way fence near the northeast corner of the orchard and burned south and west. Defendant's witnesses' testimony to the effect that they saw a man setting out fire tends to show that the fire started at the southeast corner of the orchard near the barn and that the orchard was fired by the man from south to north or in the opposite direction as the evidence, taken in its most favorable light to plaintiffs, tends to show the fire burned.

However, the jury may have found that defendant's witnesses were mistaken in the location and action of the man that they saw

in the orchard. The evidence shows that some of plaintiffs' witnesses arrived at the scene of the fire shortly after it was discovered; that at this time it had burned south to near the old barn near the fence. Their efforts in extinguishing the fire were made along the south part of the orchard. It is possible that defendant's witnesses saw these men fighting the fire in the south part of the orchard. Defendant's witnesses did not testify as to when they saw the man setting out the fire in reference to the time of the passing of the train, or in fact that they noticed any train pass. Plaintiffs' evidence shows that no person was directed or given permission to set out fire in the orchard. The intentional firing of an orchard would be a most unheard of proceeding. It was but natural for the jury to conclude that the fire was not set out by any agency other than the locomotive, there being no other reasonable explanation as to the presence of the fire.

It is insisted that the court erred in giving plaintiffs' instruction No. 4. This instruction reads as follows:

"The jury are instructed that, if from the evidence and under the other instructions in the case you find for plaintiffs, then you will find and assess their damages at such sum as, from the evidence, you may find to be the difference between the market value of the land as it was immediately before and the same immediately after the fire. If, from the evidence, you find and believe there was no market value of the land at such time, then you should assess such damages at such sum as, from the evidence, you may find to be the difference between the fair and reasonable value of the land immediately before and immediately after the fire."

There is no question but that this instruction is erroneous. It is well settled that the measure of damages in a case of this kind is the difference between the market value of the land immediately before and immediately after the fire. [Orchard Co. v. Railroad, 173 Mo. App. 450; Matthews v. Mo. Pac., 142 Mo. 645, 665; Shannon v. Hannibal & St. J. Ry. Co., 54 Mo. App. 223; Jones v. Railroad, 189 Mo. App. 6; Carroll v. St. Louis-San Francisco Ry. Co., 274 S. W. 837; Alcorn v. Railroad, supra, loc. cit. 512; Doty v. Railroad, 136 Mo. App. 254.]

It may be true, as plaintiffs contend, that where the property involved in a particular case has no established market value, the measure of damages is based upon the actual value of the property. However, under such a rule, before plaintiffs were entitled to recover on the theory of actual or intrinsic value it was necessary for them to show that the property had no market value. Plaintiffs not only failed to show this but they actually showed, by numerous witnesses, that the land in question had a market value. The instruction was undoubtedly error. [Worrall v. Grocers' Ass'n, 157 Ia.

385; Lundvick v. Ins. Co., 128 Ia. 376; Continental Oil & Cotton Co. v. Wrister & Johnson (Tex.), 168 S. W. 395; Galveston H. & S. A. Ry. Co. v. Patterson (Tex.), 173 S. W. 273; Railroad v. Rogers. (Tex.), 129 S. W. 1155; Galveston H. & S. A. Ry. Co. v. Levy (Tex.), 100 S. W. 195; 13 Encyclopaedia of Evidence, p. 510.] [See also Orchard v. Railroad, supra.]

Complaint is made of the refusal of the court to give defendant's instructions A, and F and of the giving of defendant's offered instruction A as modified by the court. These offered instructions are idential with instructions 1 and 2 in the case of Mo. Egg & Poultry Co. v. Mo. Pac. Railroad, 257 S. W. 477. While the refusal of such instructions has never been held to be erroneous, the Supreme Court in the case last cited approved them as proper to be given in a case of this kind. At another trial it would be proper for the court to give them as offered.

There is no merit in defendant's contention that the court erred in admitting testimony relative to the setting out of other fires and the emission of sparks from engines of defendant. This point is mainly based upon the contention that these occurrences were not at a time reasonably or sufficiently near the time of the setting out of the fire in question as to make them admissible. If defendant at the trial had advanced such an objection it would have been well taken for the most part but we find from an examination of the record that this was not the basis of the objection to the testimony where the objection was overruled. [See Jasper v. Wab. Railway Co., 24 S. W. (2d) 243.] The objection now urged was made and overruled in one instance but the witness did not answer the question prepounded and there was no motion to strike out the answer. The question was whether the witness had seen sparks in the year 1924, or in the early part of 1925, before the fire in question, coming from engines of the trains of the defendant in the vicinity of the orchard. The answer of the witness was that she could not say but she had seen such sparks a good many times. She could. not give any date or time as to when she had seen them. Under the circumstances, whether it was competent to show that sparks were emitted in 1924, or the early part of 1925, before the fire in question, is not presented.

In reference to the setting out of the other fires, we find the same situation present as referred to above relative to the testimony as to sparks.

At another trial on the question as to how far sparks can carry, it will not be necessary to fix any limitation as to the time as to when such sparks were seen coming from a locomotive, provided it is shown that such sparks so seen were sufficient to or did communicate a fire at the places where they fell. [51 C. J., p. 1227.]

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.